151 So.2d 356

**Mrs. Corinne Clohecy WISE, Widow of Daniel J. Wise,**

**v.**

**Vester PRESCOTT et al.**

Nos. 46299, 46309.

March 25, 1963.

Alvin R. Christovich, William W. Ogden, New Orleans, for defendants and appellants and petitioners.

John P. Dowling, Calvin H. McBride, New Orleans, for plaintiff-relatrix, Mrs. Corinne Clohecy Wise, Curtis R. Boisfontaine, New Orleans, for respondents, Vester Prescott and Allstate Ins. Co.

HAWTHORNE, Justice.

This suit arose out of an intersectional collision at St. Roch Avenue and North Miro Street in New Orleans, between a passenger bus owned by New Orleans Public Service, Inc., and operated by one of its employees, Harry J. Miller, Jr., and a car driven by Vester Prescott.

St. Roch Avenue has a wide center neutral ground with two lanes of traffic on each side, one side for lakebound traffic, the other for traffic going toward the River.

Each of the roadways of St. Roch Avenue is approximately 30 feet wide. North Miro Street is a one-way street toward Canal Street, and is about 30 feet wide. At the intersection of the two streets there is a stop sign for lakebound traffic on St. Roch, and a slow sign for vehicles on North Miro.

Vester Prescott, the driver of the automobile, was proceeding along St. Roch Avenue toward the Lake in the lane next to the center neutral ground, and was faced with the stop sign. The bus driver was proceeding along North Miro and was faced with the slow sign. The vehicles collided near the center of the intersection formed by North Miro and the lakebound roadway of St. Roch.

The plaintiff, Mrs. Corinne Clohecy Wise, a fare-paying passenger on the bus, who received injuries as a result of this collision, instituted suit for damages for physical injuries, claiming that the collision was caused by the concurring negligence of both Miller, the bus driver, and Prescott, the driver of the automobile. The case was tried before a jury, which returned a verdict in her favor, and against all defendants, in a sum in excess of $11,000.00, and judgment was rendered for this amount, in solido, against Miller; his employer, New Orleans Public Service, Inc., the owner of the bus; Prescott, and his insurer, Allstate Insurance Company, with recognition that the maximum of Allstate's liability under its policy on Prescott's car was $5000.00.

All defendants appealed to the Court of Appeal, Fourth Circuit. That court concluded as to Prescott and his insurer Allstate that plaintiff had entered into a transaction or compromise with these two defendants under which they had paid plaintiff $105.00, and that this compromise barred her action against these two defendants; but the court concluded as to Miller, the bus driver, and Public Service that Miller was negligent, and that therefore he and his employer, Public Service, were liable to plaintiff. The court, however, was of the view that the jury award was excessive, and that for injuries sustained, expenses, and loss of income plaintiff was entitled to $7500.00, subject to a credit of $105.00 received by her from Allstate. It reduced the award accordingly, rendered an in solido judgment against Miller and New Orleans Public Service, and dismissed plaintiff's suit against Prescott and Allstate Insurance Company. See 142 So.2d 613.

This court was asked for certiorari both by the plaintiff Mrs. Wise and by the defendants Public Service and Miller. The application of Mrs. Wise was granted to review the Court of Appeal's holding that the release signed by her was a compromise which barred her action against Prescott and Allstate. The application of Public Service and Miller was granted to review the Court of Appeal's holding that Miller, the operator of the bus, was negligent.

*On the Question of Liability of Public Service*

Miller, the driver of the Public Service bus, testified that as he approached the intersection and the slow sign facing him, he reduced the speed of the bus from approximately 20 miles per hour to about 10 or 12 miles per hour; that when he was 30 feet from the intersection, he looked to the left (the direction from which vehicular traffic would come) and did not see any vehicle approaching; that he then entered the intersection without looking again to his left, that he was looking straight ahead, and that when he was half-way across the lakebound side of St. Roch, he caught sight of the Prescott car out of the corner of his eye, his attention being called to it by the screech of brakes. Prescott without stopping for the stop sign at North Miro entered the intersection at a speed estimated to be 20 miles per hour. The vehicles collided approximately in the center of the intersection of North Miro and the Lake roadway of St. Roch, and the left front of the bus and the right front of the automobile were damaged.

As observed by the Court of Appeal, several passengers on the bus testified in this case. Although they were not in as good a position in their seats behind the driver to have a general observation of the whole intersection as was the driver of the bus, they testified that they saw the Pres-

cott car approaching before the collision at various distances away. One saw the car when it was a short distance from the intersection and just as the bus reached the intersection. One saw it as the bus entered the intersection. One saw the automobile when it was about 25 feet away from the point of collision and the bus was 10 feet from the intersection. Another saw the car 20 or 30 feet away when the motor part of the bus was into the intersection. One of these passengers who observed the car stated that it seemed to him there was going to be an accident.

■ Insofar as Public Service and Miller are concerned, the law applicable to the case was correctly stated by the Court of Appeal thus:

"The mere showing of injury to a fare-paying passenger on a public conveyance and his failure to reach his destination safely establishes a prima facie case of negligence and imposes the burden on the carrier of convincingly overcoming such case. Adams v. Great American Indemnity Company, La.App., 116 So.2d 307; Johnson v. Continental Southern Lines, Inc., La. App., 113 So.2d 114, 74 A.L.R.2d 1328; Coleman v. Continental Southern Lines, Inc., La.App., 107 So.2d 69; Peters v. City of Monroe, La.App., 91 So.2d 428.

"A public carrier of passengers while not an insurer is required to exercise the highest degree of vigilance, care and pre-

caution for the safety of those it undertakes to transport and is liable for the slightest negligence. Gross v. Teche Lines, Inc., 207 La. 354, 21 So.2d 378. The carrier must do all that human sagacity and foresight can do under the circumstances, in view of the character and mode of conveyance adopted, to prevent injury to passengers, the carrier being held liable for the slightest negligence with reference to the exercise of such care. Mire v. Lafourche Parish School Board, La., 62 So.2d 541."

■ The Court of Appeal found affirmative proof that the bus driver was negligent in the operation of the bus at the time of the accident. As we view the matter, however, it is necessary for us under the law only to ascertain whether Public Service and Miller have sustained the burden of convincingly overcoming the prima facie case of negligence against them.

■ As the driver of the bus approached the intersection, he was confronted with a slow sign. What degree of care is required of a driver approaching such a sign? In our opinion, he is warned by such a sign that the locus or intersection is hazardous and unusual, his duty to exercise vigilance and prudence is increased, and it is inescapable that his right to rely on a motorist to obey a stop sign at that intersection is greatly decreased. When an intersection is controlled by a stop sign and a slow sign, a high duty of care is put on

the drivers of vehicles on both thoroughfares, and, as stated by the Court of Appeal, a motorist when confronted with a slow sign must do more than diminish his speed. He must enter the intersection with extreme caution and vigilance so as to apprise himself that he may proceed safely across. Reducing his speed is only a partial fulfillment of the duty such a sign imposes.

In view of the high degree of care required of public carriers toward their fare-paying passengers, the vigilance and prudence that must be exercised in the face of a slow sign, and the fact that the burden is on the carrier to show its freedom from negligence, we cannot say that the jury and the Court of Appeal erred in holding Public Service and Miller liable. The bus driver's complete lack of awareness of the Prescott car's approach under the circumstances of this case appears to us to be sufficient to justify the conclusion that he and Public Service failed to prove that he was maintaining the proper lookout, vigilance, and caution required at this intersection. Consequently we conclude that Public Service and Miller have not sustained the burden required under the law of overcoming the prima facie case of negligence against them.

In brief and in argument in this court counsel for Public Service contend that the Court of Appeal misconstrued and did violence to the law as laid down in Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292. That case was cited with approval in Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849, in which we stated:

"* * * The motorist on the right-of-way street, with knowledge of the location of such a stop sign, has a right to assume that any driver approaching the intersection from the less favored street will observe the law and bring his car to a complete stop before entering the intersection, and such motorist can indulge in this assumption until he sees, or should see, that the other car has not observed, or is not going to observe, the law. * * *"

This principle of law has little or no application to the facts of the instant case, for North Miro Street on which the bus driver was proceeding was not "favored" over St. Roch at this intersection to the extent that the right-of-way street in those cases was favored because, as we have pointed out, a slow sign confronted the bus driver; and therefore his right to assume that a motorist would observe the stop sign on St. Roch was greatly decreased in comparison with the right of the driver in those cases to indulge in such assumption, and correspondingly his duty to exercise vigilance and prudence was greatly increased. Certainly the presence of the stop sign on St. Roch does not of itself determine the standard of care at this intersection, but the presence of the slow sign on North Miro

must also be considered in determining that standard of care, and in determining the sufficiency of Public Service's proof to over-come the presumption of negligence against it and to show its freedom from negligence. Under these circumstances in our view the decision of the Court of Appeal does no violence to the case of Kientz v. Dennery, supra.

### On the Validity of the Release by Mrs. Wise of Prescott and His Insurer Allstate

The release in this case is a printed form, bears the signature of Mrs. Wise, and recites a consideration of 105.00.[1] Its language is broad, general, and all-inclusive, and it contains such expressions as "release and forever discharge", "all claims" for "damages" "sustained", or "may hereafter sustain", "consequences not now anticipated", "all unknown and unanticipated injuries and damages".

The negligence of Prescott is conceded and is no longer an issue in the case. Prescott and his insurer, Allstate Insurance Company, seek to evade liability on the theory that no judgment can be rendered against them because all matters in dispute between them and plaintiff were settled by the release, which is a transaction or compromise and as between the parties has the force equal to the authority of the thing

adjudged under Articles 3071 and 3078 of the Civil Code.

Plaintiff Mrs. Wise, who was over 70 years old when the accident occurred, gave the following version relating to the procuring of the release: As a result of the collision she was thrown to the floor of the bus. Immediately afterwards she was taken to Charity Hospital, where X-rays were made and medication given her for pain. She spent the night in her apartment but did not sleep because of the pain in her head, and the medication made her "woozy". The next morning she was bruised and sore all over, and her face and eyes were bruised and swollen. She did not feel well enough to get around, and a neighbor came to look after her while she reclined in an easy chair. That afternoon at about 3:30 an adjuster from Allstate, on his own solicitation, came to her apartment and was admitted by the neighbor. The adjuster did not report himself to be such, and no insurance company was mentioned. This young man, who was nice and friendly, told Mrs. Wise that he came in behalf of Mr. Prescott, who had been worrying about her and felt sorry for her because of her age and wanted to give her some money to help with the X-rays and medical bills. She asked him whether this would have anything to do with the case, and he answered, "No." She would not have signed the document presented to her if she had known it was

---

.. 1. Prior to instituting suit plaintiff tendered this amount to Allstate, but it was refused.

a release. She signed the paper which he told her was to show her thanks to Prescott and to show his good faith in representing Prescott. She could not read what was on the paper she signed because her glasses had been broken in the accident and she could not read without them. She had an extra pair but did not know where they were, and in any event her face was so swollen that she could not have gotten them on. No copy of the paper she signed was left with her.

On the other hand, the adjuster's version was this: He told the plaintiff he was a claims agent for the insurance company and wanted to negotiate a settlement. Mrs. Wise accepted the $105.00 he offered her without hesitation or complaint, there was no discussion about the amount, and there was no discussion about liability or fault as the release taken denied any liability of Prescott and Allstate. He thought Mrs. Wise read the release because she held it in front of her long enough to do so. The entire negotiations were consummated in about 15 minutes.

It is obvious that the testimony of Mrs. Wise and that of the adjuster are in conflict. This case, as stated previously, was tried before a jury. The jury pursuant to a specific question of the court found that the release was invalid, and the trial judge refused to grant defendants a new trial. The jury was called upon to determine the credibility of the witnesses and the weight to be given to their testimony, and it is apparent from their finding that the release was invalid that they accepted Mrs. Wise's version of the procuring of the release.

According to Mrs. Wise's testimony, accepted by the jury, she took the money in the belief that it was a gift from Prescott and that the document she signed was a receipt for the money, and she signed the document under the assurance that it would not have anything to do with her case. The question is whether under these facts the jury's finding that the release was invalid was correct as a matter of law.

This kind of release is often called in personal injury cases a "rush release", and is executed in a situation wherein there exists a high potential of error. Recognizing this great possibility for error inherent in rush releases, the legislatures of at least seven states have passed measures affecting their validity, and two of these have expressly labeled them as "crimes against public policy". Connecticut in 1959, and Vermont and Idaho in 1961, enacted statutes permitting persons receiving personal injuries in accidents to repudiate and void any settlement or release entered into within 15 days of the injury.[2] Maryland enacted

2. The Connecticut statute, C.G.S.A., § 52–572a, expressly forbids the negotiation of any contract with the injured person by one having an adverse interest within 15 days of the "tortious act". No limitation is made as to time within

a similar provision in 1955 with a five-day period from the injury,[3] and North Dakota since 1943 has had a statute with a 30-day period.[4] In Massachusetts since 1950 any settlement or release obtained from a hospital patient within 15 days of the injury is null and void unless the injured party indicates his consent in writing at least five days prior to the procuring of the release.[5] Maine's similar provision enacted in 1959 provides that a settlement or release obtained within 10 days of the injury is null and void.[6]

■ Up to this time the Legislature of our state has not enacted any law to protect persons suffering personal injuries from the possibility of error inherent in quick releases, compromises, or settlements, and this court would not be justified in law in declaring a "rush release" invalid simply because it was obtained within a very short time of the accident. In such cases, however, we feel that we are justified in recognizing that high potential for error in our consideration of all the facts and circumstances connected with the execution of this type of release.

The adjuster here sought out Mrs. Wise within 24 hours of the accident, after she had spent a sleepless and painful night, while she needed someone to attend her, while she was feeling sore and miserable from the injuries she had received in the accident, and at a time when she, especially because of her age, could not reasonably have been expected to have recovered from the nervousness and upset which follow such an experience. According to the adjuster the whole conversation with Mrs. Wise lasted about 15 minutes.

■ The facts and circumstances of the execution of the release in the instant case, in our opinion, clearly justify the finding of the jury, concurred in by the judge, that Mrs. Wise executed the release through error, and that she signed it reasonably believing it to be a receipt for a gift from Prescott and believing that it would not have anything to do with her case. Her error is one recognized under the general articles of our Civil Code on Obligations as "Error as to the *nature* of the contract" which will· render it void, La.Civ.Code Art. 1841. (Italics ours.)

which such a reprobated contract may be avoided. The Vermont statute, 12 V.S.A. 1076, provides a three-year limitation for disavowal; Idaho's, 5 Idaho Code § 29–113, provides a one-year period for disavowal.

3. 7 Annotated Code of Maryland (1957), Art. 79, § 11. A short 60-day period is allowed for voiding the release.

4. 1 North Dakota Century Code Annotated, §§ 9–08–08, 9–08–09. The contract may be avoided within six months.

5. M.G.L.A., c. 271, § 44. Massachusetts classifies it under the chapter heading "crimes against public policy".

6. 4 Rev'd Stats. of Maine (1954), c. 137, § 49–A. Maine classifies the matter also under the heading "crimes against public policy".

The judgment of the Court of Appeal dismissing plaintiff's suit against Vester Prescott and Allstate Insurance Company is annulled and set aside; and it is now ordered that there be judgment in solido in favor of plaintiff Mrs. Corinne Clohecy Wise and against Prescott, Allstate, Harry J. Miller, Jr., and New Orleans Public Service, Inc., in the sum of $5,000.00 together with legal interest, and, further, that there be judgment in solido in favor of plaintiff and against Prescott, Miller, and Public Service in the sum of $2395.00 together with legal interest. All costs are to be paid by the defendants.

. McCALEB, J., concurs in the decree.

151 So.2d 362