AYRES, Judge.
This is an action in tort wherein plaintiff seeks to recover damages for personal injuries allegedly sustained on November 5, 1959, in an intersectional collision at McNeil and Texas Streets in the City of Shreveport. Involved were a Ford truck owned by R. J. Lineo, operated at the time by plaintiff, Linco’s employee, and a Ford automobile owned and operated by defendant Willie Lee Hall and insured by the defendant Maryland Casualty Company.
Plaintiff was proceeding south on McNeil Street and defendant, west on Texas Street. Traffic at this street intersection is controlled by the usual electric semaphore traffic signals.
Negligence charged to defendant Hall included his inattention and failure to maintain a proper lookout, running a red light, and entering the intersection in front of and in the path of plaintiff’s vehicle. Defendant directed similar charges of negligence to plaintiff as the cause or, in the alternative, a contributing cause of the accident.
In addition, defendants alleged that all claims and rights asserted by plaintiff had been adjusted, compromised, and settled. Hence, a release purportedly executed by plaintiff was made the subject of a plea of res judicata.
From a judgment in favor of plaintiff, defendants appealed. Plaintiff has answered the appeal and prayed that the award be increased.
First for consideration is a question of liability. The evidence clearly establishes that the negligence of defendant Hall constituted the sole, proximate cause of the accident. Plaintiff’s testimony that the traffic light was favorable to him as he entered the intersection is corroborated by the testimony of one C. H. Henry, who was then a police officer of the City and who was on a westbound trolley on Texas Street which had stopped at the time in obedience to a red light. Hall was proceeding on the same street and in the same direction as the trolley. No fault was shown on the *385 part of plaintiff, who entered the intersection on a favorable signal light.
The facts upon which the plea of res judicata is based may be briefly reviewed. A. M. Cockrell, claims manager for defendant Maryland Casualty Company, the collision insurer of Linco’s truck, caused an appraisal of the damage to be made. The truck was thereafter repaired at Egan’s Body Works. In payment of the repairs, Cockrell issued a draft upon his company for the sum of $182.63, payable not only to Egan’s Body Works and Lineo but to plaintiff as well. This draft was forwarded by Cockrell to Lineo, who endorsed it and who then requested that plaintiff likewise endorse it so that it might be passed on to Egan’s Body Works in payment of the repairs done on Linco’s damaged truck. Plaintiff, at the request of his employer, endorsed the draft. He did so without reading it. The draft, over the places provided for the endorsement of each of the named payees, contained the following recital:
“By acceptance and endorsement of this draft, it is agreed that same is received in full and final settlement of all liability and claims against the person (s), firm(s) or corporation (s) covered under the terms of the policy (number of which appears on face hereof) as insured and/or the Maryland Casualty Company as insurer, because of damage, loss or injury or services rendered resulting or to result from an accident which occurred on or about the date stated on the face hereof.”
No discussion was ever had between any representative of Maryland Casualty Company and plaintiff relative to plaintiff’s injuries or as to a settlement therefor. Plaintiff received no benefit from nor any part of the proceeds of the draft. The draft was in the exact amount of the repairs to the truck. It is only logical to assume that all parties, including Cockrell, knew that the draft would ultimately be delivered to Egan’s Body Works in payment of the repairs made upon the truck. Lineo was interested in having the damage done to his truck paid for; Cockrell was interested in obtaining a release from all parties involved or concerned in the accident. Cock-rell’s intentions, however, were never conveyed to plaintiff.
We are in accord with the conclusion reached by the trial court that plaintiff never intended that the draft endorsed by him would serve as a release of his claim for personal injuries. Compromises, characterized as transactions in the Civil Code, have, as between the interested parties, a force equal to the authority of the thing adjudged. LSA-C.C. Art. 3078. However, a compromise or transaction is an agreement, or a contract, between two or more persons who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in a manner upon which they agree, which they prefer to the hope of gaining, balanced by the danger of losing. LSA-C.C. Art. 3071. Thus, the essentials of an agreement between the parties by which their differences are adjusted by mutual consent are lacking in this case. Moreover, plaintiff and Maryland Casualty Company, as already observed, were never in contact with each other concerning plaintiff’s injuries.
Furthermore, “Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them.” LSA-C.C. Art. 3073.
Consent is a prerequisite to the creation of a valid agreement. LSA-C.C. Art. 1766. LSA-C.C. Art. 1819 recites the means by which consent may be vitiated by law:
“Consent being the concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and result *386 ing' in each party from a free and deliberate exercise of the will, it follows that there is no consent, not only where the intent has not been mutually communicated or implied, as is provided in the preceding paragraph, but also where it has been produced by—
“Error;
“Fraud;
“Violence;
“Threats.”
In construing the facts and in giving effect to the aforesaid principles of law, the conclusion is inescapable that, so far as plaintiff is concerned, the release is without force or effect because of error. As heretofore observed, there was no agreement between plaintiff and Maryland Casualty Company, nor any intent on plaintiff’s part to release his claim for personal injuries. While defendant’s representative may have intended that the endorsement serve as a release of plaintiff’s personal injuries, there was no understanding or mutual consent to that effect. His error is one recognized under the general articles of our Civil Code on Obligations as “Error as to the nature of the contract” which will render it void. LSA-C.C. Art. 1841; Wise v. Prescott et al., 244 La. 157, 151 So.2d 356, 362.
The facts of the instant case are similar to those in the case of Moak v. American Automobile Insurance Company et al., 242 La. 160, 134 So.2d 911. There, it was held that an instrument signed by both husband and wife releasing the husband’s insurer upon the payment of the exact amount of of the value of destroyed personal effects in an automobile was without effect because of error and, hence, did not bar recovery by the wife for her injuries.
Defendants have cited Darensbourg v. Columbia Casualty Company, La.App. 4th Cir., 1962, 140 So.2d 241 (writs denied), wherein the validity of a release was upheld. Plaintiff in that case sustained property damage as well as alleged personal injuries. A question of liability existed. Plaintiff received the amount of the surety’s draft and released it from all damages, personal as well as property damages. Under the facts the record disclosed, the amount paid, corresponding to the extent of the property damage, was merely coincidental.
Defendants’ special plea in the instant case, of the release as res judicata, was without merit and was correctly denied.
Lastly for consideration is the matter of an award adequate to compensate plaintiff for the injuries sustained and the pain and suffering endured. The record discloses that, in 1953, plaintiff sustained a whiplash type injury but had apparently recovered from the effects thereof prior to the occurrence of the present accident. Immediately following the accident now under consideration, plaintiff suffered pain in the back of his neck and shoulders. Nevertheless, he continued to work. Pain and suffering persisting, plaintiff consulted Dr. E. C. Simonton, an orthopedist, on November 24, 1959. Traction was suggested for use in treatment, but, because of his desire to work, this suggestion was not carried out. Pain and discomfort extended over a year and during intervals thereafter. For relief, sedatives were administered. A heating pad was kept in use until the trial in March, 1963.
Dr. Simonton was of the opinion plaintiff sustained, in his latter accident, muscular and ligamental injury to his cervical spine, accompanied by aggravation of previously existing degenerative joint diseases. Noted by Dr. Simonton, as well as by Dr. Willis J. Taylor, an orthopedist, who examined plaintiff at 'the request of the defendants, was the narrowing of the sixth cervical interspace. A posterior displacement of the second cervical vertebra upon the third cervical vertebra was also noted, as was an arthritic condition which the injuries, in all probability, aggravated. Whether the aforesaid displacement ante *387 dated the accident was not determined. Plaintiff’s permanent disability was estimated at 5% of the body as a whole.
After reviewing the evidence, the trial court concluded that plaintiff suffered a possible mild whiplash type of injury to his neck, and that the injuries sustained aggravated or reactivated a previously existing arthritic condition to such an extent that plaintiff suffered mild pain and discomfort for a considerable time after the accident. Nevertheless, the court was of the opinion that the injury was not severe. We find no manifest error in these conclusions nor in the award of $1,750 in compensation for the injuries sustained.
The judgment appealed is therefore affirmed at defendants-appellants’ cost.
Affirmed.