SCHOTT, Judge,
dissenting.
At the point where this collision occurred Elysian Fields consisted of northbound and southbound roadways divided by a neutral ground measuring 62 feet 8 inches wide. The northbound side of Elysian Fields was 44 feet 5 inches wide, and consisted of three lanes to accommodate moving traffic and a parking lane on the east side. The southbound side of Elysian Fields Avenue was 43 feet 7 inches wide. North Prieur Street was 30 feet wide. There was a stop sign facing west at Prieur Street and thus affording traffic on Elysian Fields the clear right of way. Prior to the collision the bus was traveling north on Elysian Fields and the automobile was proceeding east on North Prieur, crossing Elysian Fields be *276 fore, and at the time of impact the bus was in the third traffic lane from the neutral ground, which lane was 24 feet 2 inches from the neutral ground. The impact was between the left front of the bus and the right front side of the automobile.
In Wise v. Prescott, 244 La. 157, 151 So.2d 356 (1963) the Supreme Court restated the legal principles applicable to a case such as this:
“The mere showing of injury to a fare-paying passenger on a public conveyance and his failure to reach his destination safely establishes a prima facie case of negligence and imposes the burden on the carrier of convincingly overcoming such case ... “A public carrier of passengers while not an insurer is required to exercise the highest degree of vigilance, care and precaution for the safety of those it undertakes to transport and is liable for the slightest negligence. . The carrier must do all that human sagacity and foresight can do under the circumstances, in view of the character and mode of conveyance adopted, to prevent injury to passengers, the carrier being held liable for the slightest negligence with reference to the exercise of such care. . . .” (citations omitted)
Thus, in our review of this case we must decide whether the trial court committed error in concluding that NOPSI failed to carry its burden of proof that it was without any negligence. For NOPSI to prevail it must establish that its driver exercised the highest degree of care.
At the trial Blackwell, NOPSI’s driver, testified: After making a stop the block before North Prieur Street he pulled out into the lakebound moving lane of traffic. When he was about a half block from North Prieur Street he saw the Owen automobile stopped on North Prieur Street on the other side of Elysian Fields. As he moved forward accelerating speed, he saw the Owen automobile cross over the southbound side of Elysian Fields, enter the neutral ground and come to a stop before entering the northbound side of Elysian Fields from the neutral ground. Blackwell first realized that a collision was imminent when Owen’s car entered his lane of traffic and was five feet ahead of him. At that time Blackwell was traveling 15 miles per hour and immediately applied his brakes. Describing the movement of Owen’s automobile, Blackwell said “it shot out” from the neutral ground and attained a speed of 15 to 20 miles an hour by the time of impact. At a deposition taken some six months before trial, Blackwell said nothing about Owen stopping in the neutral ground at any time and said he did not realize a collision was imminent until the automobile was one and a half feet away from him.
The police officer who was NOPSI’s witness testified that he estimated the speed of the Owen automobile to be ten miles per hour and that of the bus to be fifteen miles per hour before the impact. He found that the bus had left five feet of skid marks behind its front wheels and after impact the bus traveled about five or six feet pushing the automobile forward.
Some of the passengers testified that pri- or to the collision they saw coming from the neutral ground a green flash or blur followed quickly by the sudden stop of the bus and the collision. One passenger testified that she heard a stir of excitement among the pedestrians as though they saw something, she looked up and saw the blur which was immediately followed by application of the brakes and the impact.
If one accepts Blackwell’s testimony at the trial that he saw Owen come to a stop in the neutral ground, the question becomes whether or not Blackwell had some duty to see Owen leaving the neutral ground and approaching his path before that point when Owen entered his lane just one and a half to five feet in front of him. Owen traversed 24 feet from his stopped position before Blackwell saw him again even though Blackwell had a clear and unobstructed vision of Owen’s path.
It is axiomatic that any driver who fails to see what is obvious to him is derelict in his duty. On the other hand, when Blackwell saw Owen come to a stop he was entitled to presume that he would remain *277 stopped until the bus passed. But the fact remains that Owen did not remain stopped and from the moment he started to move Blackwell should have seen that the two vehicles were on a collision course. Since Blackwell insisted that he never attained a speed in excess of fifteen miles per hour it is reasonable to infer that he was negligent in failing to stop before the two vehicles were five feet if not one and a half feet apart.
This conclusion is bolstered by the testimony of those passengers who testified that they saw a blur or a flash approaching from the left of the bus before Blackwell did and particularly by the testimony of Mrs. Patricia Morris that she was seated in the rear and on the right side of the bus when she heard other passengers “say something like they could see the car coming,” whereupon she raised her head and saw the top of the car just prior to impact. She answered yes to this question:
“I take it there were other people on the bus who, like you, saw the car before the accident because they reacted with oh’s and ah’s before the collision?”
From this testimony it seems that an interval of time passed when Owen started to move from the neutral ground and the passengers became sufficiently alarmed to cause Mrs. Morris to look up. Again, we come back to the question of why didn’t Blackwell anticipate trouble before Owen was in his path five feet in front of him.
When Blackwell was recalled to the witness stand after Mrs. Morris testified he denied that he heard any indication among the passengers that a collision was imminent. Asked to explain why the conflict between her testimony and his he stated that he had more than one thing to contend with while operating his bus.
This discussion of the evidence was preceded by the statement of the law which places a high degree of care on a public carrier. It is clear that this was an extremely close case to call, but our role as a reviewing appellate court is quite different than the role of the trial court. We must decide if the evidence before the trial court furnished a reasonable factual basis for his conclusion, in effect, that Blackwell’s conduct did not measure up to the extremely high degree of care placed upon him, and that this accident could have been avoided had Blackwell exercised the slightest degree of care. Canter v. Koehring, 283 So.2d 716 (1973). Under this standard I have concluded that the judgment on liability should be affirmed even though I might have decided the case differently had I been the trial judge.