368 So.2d 1052 (1979)
Rebecca DAVIS, widow of Frank Schief, Jr., et al.
v.
John P. OWEN and New Orleans Public Service, Inc.
Donna SCIPIO, wife of/and Lester Nicholas
v.
NEW ORLEANS PUBLIC SERVICE, INC., and John B. Owens.
Jeanette JOHNSON, wife of/and Warren Johnson
v.
NEW ORLEANS PUBLIC SERVICE, INC., and John B. Owens.
Patricia SANDERS and Edna Leon
v.
NEW ORLEANS PUBLIC SERVICE, INC., et al.
Debra ALEXANDER
v.
NEW ORLEANS PUBLIC SERVICE, INC., and John B. Owens.
Pedro CHAMORRA et al.
v.
NEW ORLEANS PUBLIC SERVICE et al.
Johnnie JOHNSON
v.
John P. OWEN and New Orleans Public Service, Inc.
Nos. 62552 to 62557 and 62564.
Supreme Court of Louisiana.
March 5, 1979.
*1053 Floyd F. Green, New Orleans, for defendants-respondents.
Warren M. Simon, Jr., John J. McCann, Herman M. Schroeder, New Orleans, for Davis, et al.
George W. Reese, New Orleans, for Scipio, etc.
Janine Dingleman, Martzell & Montero, New Orleans, for Jeanette Johnson, etc.
Daniel J. Caruso, New Orleans, for Sanders, etc.
Mrs. Bernette J. Johnson, New Orleans, for Alexander.
David A. Kattan, New Orleans, for Chamorra, et al.
Charles R. Maloney, New Orleans, for Johnnie Johnson.
CALOGERO, Justice.[*]
We granted writs in seven cases consolidated for trial below which arose out of an automobile-bus collision, to review a Court of Appeal decision which reversed district court judgments favorable to the plaintiffs. Johnson v. Owen, 359 So.2d 272 (La.App. 4th Cir. 1978), writs granted in 362 So.2d at 784, 785 and 786.
*1054 We recite the basic facts, which are undisputed, as they are alleged by the defendant, New Orleans Public Service, Inc. (hereafter, NOPSI).
These seven personal injury lawsuits stem from an intersectional collision between a Cadillac automobile and a NOPSI bus. Seven bus passengers received various injuries ranging from mild to moderate in degree. Davis v. Owen, No. 62,552 in this Court, is a suit by the widow and heirs of one Frank Schief which alleges that his death was caused when a blow to his lower right abdominal quadrant sustained during the accident resulted in peritonitis secondary to trauma.
The accident took place at the intersection of Elysian Fields Avenue and North Prieur Street in New Orleans. The bus was on Elysian Fields Avenue travelling in the direction of the lake, following a path in the first moving lane next to the parking lane. The Cadillac automobile was proceeding on North Prieur Street in a downtown direction, toward Gentilly, or away from Canal Street. There were no other vehicles in the vicinity at the time of the accident.
A description of the intersection and area is as follows: Elysian Fields Avenue is a wide neutral ground boulevard. Each side of Elysian Fields Avenue has three moving lanes for traffic and a parking lane; each lane is approximately twelve feet wide. The lakebound and riverbound sides of Elysian Fields Avenue are separated by a neutral ground having a width of sixty-two feet (62'). North Prieur Street is a two way street for traffic going uptown and downtown. It measures thirty feet in width. There are stop signs facing North Prieur Street before entry to Elysian Fields Avenue. Both streets are asphalt paved.
The collision took place in the lakebound moving lane, immediately adjacent to the parking lane, of Elysian Fields Avenue, in the middle of North Prieur Street. Both vehicles came to rest about four to five feet from impact, the bus still in its lane of traffic. The stop sign which faced the Cadillac was a stop sign on the west or Canal Street side of Elysian Fields Avenue adjacent to the riverbound lanes for traffic on Elysian Fields Avenue. As previously noted, the accident did not take place in the lanes for riverbound traffic. The Cadillac crossed four lanes of the riverbound side of Elysian Fields Avenue (approximately forty-eight feet), an additional width of the neutral ground (another sixty-two feet), and almost three full lanes of lakebound traffic (approximately another thirty to thirty-six feet) before the front end of the NOPSI bus struck the right side of the Cadillac.
The case was tried in the district court without a jury. The trial judge found:
1) The driver of the Cadillac automobile was negligent in failing to yield to the traffic on Elysian Fields Avenue, and in entering the intersection of North Prieur Street and Elysian Fields Avenue without regard to the dangerous situation created.
2) The NOPSI bus driver was also guilty of negligence in failing to use due care while driving his bus on Elysian Fields Avenue, and for failure to bring his bus under control after having seen the automobile in question.
3) The bus driver had ample time to bring his bus under control without the mishap occurring at North Prieur Street and Elysian Fields Avenue.
Accordingly, the trial court entered judgments against John P. Owen, the driver of the Cadillac, and NOPSI, in favor of the respective plaintiffs and in the respective amounts set forth: 1) Rebecca Davis, widow of Frank Schief, Jr., an amount of $141,590.66;[1] 2) Rose Mary Schief Fox, surviving daughter of Frank Schief, Jr., an amount of $1,000 for loss of love and affection; 3) Eva Lee Schief Lee, surviving daughter of Frank Schief, Jr., an amount of $500 for loss of love and affection; 4) Wallace Calvin Schief, surviving son of Frank *1055 Schief, Jr., an amount of $500 for loss of love and affection; 5) Donna Scipio, wife of/and Lester Nicholas, an amount of $2,460.00; 6) Jeanette Johnson, wife of/and Warren Johnson, an amount of $1,500; 7) Edna Leon, an amount of $1,937.65; 8) Patricia Sanders, an amount of $1,214.15; 9) Debra Alexander, an amount of $2,300.00; 10) Victoria Chamorra, wife of/and Pedro Chamorra, $2,330.00 and 11) Johnnie Johnson, $4,060.00.
Defendant NOPSI appealed, taking issue with the trial court finding on liability and, alternatively, with the trial court's award to the Schief widow of $78,616 for loss of support and $50,000 for her husband's pain and suffering. By way of answer to the appeal, Schief's widow and his three major children took issue with the trial court's awards for loss of love and affection made to them. The Schief children also sought to recover for their father's pain and suffering the sums for which they had sued. (Each child had sued for $16,666 and identified that sum as one-third of one-half of the amount attributable to their father's pain and suffering.)
In the Court of Appeal, after a three judge panel split in favor of reversing the trial court, the case was reargued to a five judge panel, which by a 3-2 vote, with one judge in the majority concurring, reversed the decision of the trial judge in all seven consolidated cases, rendering judgments in favor of appellant NOPSI and dismissing the plaintiffs' suits.
Because the Court of Appeal decided the liability issue of the case in NOPSI's favor it did not have to reach the alternative contentions of defendant challenging the cause of death of Frank Schief and the awards made to the Schief widow for loss of support and for pain and suffering. Likewise, the Court of Appeal did not have to decide the claims of Schief's widow and children for additional recovery for loss of love and affection, nor the Schief children's claim for an award recognizing their entitlement to recovery in consequence of their father's pain and suffering.
We must first decide the matter of NOPSI's liability; all plaintiffs in the seven suits consolidated in the trial court urge us to reverse the Court of Appeal on this issue. Because a finding adverse to NOPSI requires that we also direct our attention to the other issues previously mentioned, we begin our discussion of the issues presented in this case by setting forth the basis upon which we determine to reverse the Court of Appeal judgment.
Because plaintiffs were fare-paying passengers on a public conveyance[2] and were injured, defendant NOPSI had the burden of proving that it was without the slightest degree of negligence. As this Court stated in Wise v. Prescott, 244 La. 157, 151 So.2d 356 (1963).
"The mere showing of injury to a fare paying passenger on a public conveyance and his failure to reach his destination safely establishes a prima facie case of negligence and imposes the burden on the carrier of convincingly overcoming such case.
* * * * * *
A public carrier of passengers while not an insurer is required to exercise the highest degree of vigilance, care and precaution for the safety of those it undertakes to transport and is liable for the slightest negligence.
* * * * * *
The carrier must do all that human sagacity and foresight can do under the circumstances, in view of the character and mode of conveyance adopted to prevent injury to passengers, the carrier being held liable for the slightest negligence with reference to the exercise of such care." (citations omitted)
The trial judge concluded that NOPSI failed to carry its burden, that its driver had not exercised the highest degree of care, that he was negligent. NOPSI appealed this finding.
*1056 In reviewing the questions of fact and conclusions of fact involved in this suit for damages, the Court of Appeal is mandated to leave undisturbed factual findings of the trial court based upon evidence which furnishes a reasonable factual basis for those findings, unless it finds manifest error. "Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973). If, however, the appellate court concludes that the trial court's factual findings are clearly wrong, the mere fact that some record evidence appears which would furnish a reasonable factual basis for the contested findings does not require affirmance. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
Bound to impose upon NOPSI the burden of overcoming the presumption that its driver was negligent, the trial court held that NOPSI had failed in that regard. The trial judge determined that the bus driver had not used due care. The dissenting opinion filed in the Court of Appeal acknowledges the applicable standard of appellate review, articulates some of the record support for the trial court's findings, then sets forth the opinion of the dissenters that under the proper standard of appellate review the trial court judgment on liability adverse to NOPSI should be affirmed. The dissent pointed out that at trial the NOPSI driver testified that the Cadillac stopped after entering the neutral ground, before entering the lakebound roadway of Elysian Fields Avenue upon which the bus was travelling,[3] then commented:
"If one accepts Blackwell's testimony at the trial that he saw Owen come to a stop in the neutral ground, the question becomes whether or not Blackwell had some duty to see Owen leaving the neutral ground and approaching his path before that point when Owen entered his lane just one and a half to five feet in front of him. Owen traversed 24 feet from his stopped position before Blackwell saw him again even though Blackwell had a clear and unobstructed vision of Owen's path.
It is axiomatic that any driver who fails to see what is obvious to him is derelict in his duty. On the other hand, when Blackwell saw Owen come to a stop he was entitled to presume that he would remain stopped until the bus passed. But the fact remains that Owen did not remain stopped and from the moment he started to move Blackwell should have seen that the two vehicles were on a collision course. Since Blackwell insisted that he never attained a speed in excess of fifteen miles per hour it is reasonable to infer that he was negligent in failing to stop before the two vehicles were five feet if not one and a half feet apart."
The dissenting judges found support for this conclusion that the NOPSI driver's negligence was a reasonable inference in light of the facts in the testimony of some of the passengers.
The Court of Appeal majority had noted that the bus driver estimated the time between brake application and impact to be a few seconds, had observed that a testifying passenger said that braking commenced "somewhere close about that time [when she reacted to her fellow passengers' utterances of alarm, looked up and saw the Cadillac]" and had set forth that the witness corroborated the "few seconds" estimate of elapsed time between braking and impact of the bus driver when asked to testify about the elapsed time. From this testimony to which the majority adverts, it infers *1057 that the bus driver saw the Cadillac unexpectedly enter the bus path at about the same time that the passengers saw it.
A more reasonable inference from the record in our view is that some of the bus passengers saw the moving Cadillac and appreciated the imminent danger before the bus driver did. Thus, we believe that even accepting as true, for argument's sake, the questionable fact that the Cadillac was seen by the NOPSI driver to stop in the neutral ground prior to entering the lakebound roadway wherein the collision occurred,[4] there was a reasonable basis for finding that the bus driver failed to see that which he could have and should have seen.
The trial court expressly found a failure on the part of the bus driver to use due care; one element of due care in this case is just this duty, to see that which one could and should see. The Court of Appeal draws inferences from the testimony and concludes that the bus driver complied with his duty to see that which he should have seen. Our review of the record discloses ample evidence from which one can quite reasonably draw a contrary conclusion, one which is consonant with the trial court's conclusion of failure to exercise due care.
The evaluations and inferences of the Court of Appeal in this case are not unreasonable. Nor, however, are those of the trial judge. In any event, our review of the record satisfies us that there was no manifest error in the trial court ruling, that the trial judge's finding was not clearly wrong.[5] (Canter v. Koehring, supra; Arceneaux v. Domingue, supra ). Therefore, the Court of Appeal exceeded the proper scope of review by substituting its judgment for that of the trial judge. We find it instructive to note that prior to our consideration of this matter, six judges hearing the case have split evenly; of course, the Court of Appeal is subject to the same limitations which hamper this Court's consideration of cases it reviews  a "cold" record which presents no opportunity to hear first-hand the testimony of the witnesses or to observe their demeanor in court.
We therefore conclude that the Court of Appeal erred in reversing the trial court judgment on the issue of defendant, NOPSI's liability.
Having resolved the liability issue favorably to plaintiffs, we must now decide, in connection with the judgment in the Schief case (Davis v. Owen, No. 62,552) the causation issue and NOPSI's claims that the trial court's pain and suffering award and loss of support award are excessive. Additionally, we must review the awards for loss of love and affection made to the widow and the children of Frank Schief, alleged by them to be inadequate, and must decide the question of the children's entitlement to recover damages in connection with their survival claim.
We have reviewed the record in connection with NOPSI's argument to ascertain whether Schief's death was caused by the accident. We conclude that such causation is clearly established. No contrary determination has heretofore been made in this case.[6]
With respect to the award to Schief's widow of $78,616.00 for loss of support, our study of the record leads us to conclude that there is no reason to reject the trial court's determination that damages for loss of support should have been in *1058 that amount. The basis for NOPSI's challenge of that award is the fact that Schief faced mandatory retirement. The evidence that the man was active, hard-working and in good health prior to the accident, coupled with the wife's testimony that he was not going to retire on his sixty-fifth birthday (which he would have celebrated just months after the accident, had he survived), ". . . not as ambitious as he was", establishes a satisfactory basis for a substantial award for loss of support premised on the likelihood that other gainful employment would have been pursued.
Insofar as the $50,000 award for Schief's pain and suffering is concerned, we likewise conclude that there was no abuse in the amount awarded and that there is no adequate basis for either increase or reduction of that award. The record reveals that Schief's physician, who saw Schief on the accident date and who attended him thereafter until his death, testified that Schief complained of pain from the time of the first visit and suffered severe pain during the intervening days which preceded his death. This testimony undermines NOPSI's claim that the pain and suffering award of $50,000 is excessive, which is based on the fact that Schief was ambulatory for a few days prior to his admission to the hospital, where he ultimately died. In connection with the pain and suffering award, the apportionment issue raised by the Schief children who seek to share equally with their deceased father's widow will be discussed hereafter.
Nor, after examination of the record and consideration of the arguments of Schief's widow and his major children, are we constrained to increase the awards made for loss of love and affection by the trial court. That court specifically noted that it was unimpressed with testimony of the Schief children relating closeness or overwhelming affection between them and their father. While the testimony of Rebecca Davis Schief indicates a relationship with her husband characterized by an abiding love and affection, we cannot say that the trial judge abused his discretion in awarding the $7,500.00 amount for the widow's loss.
A more troublesome issue is posed with regard to the question of the Schief children's entitlement to a portion of the $50,000 recoverable for pain and suffering. By virtue of the provisions of Civil Code article 2315, these children, although majors, are granted a right of action to recover, along with the wife of the deceased injured party, sums for their father's pain and suffering which he could have claimed, had he survived. These children, having asserted their right in the petition for damages filed in the district court, were clearly entitled to recover a portion of the sum attributable to their father's post-accident pain and suffering, and the trial court's failure to award them damages was error. Although recognizing her step-children's entitlement to recover damages for their father's pain and suffering, Frank Schief's widow argues that in the event we find (as we have) the $50,000 amount attributable to the pain and suffering endured by the deceased a correct award she should be entitled 1) to half of that award, on the basis that at the time the pain and suffering was endured by Mr. Schief she was his wife and the sum, had it been recovered by him, would have been community property (Civil Code articles 2334 and 2402) and 2) to a virile share (one-fourth) of the remaining one-half of that $50,000 award. The major children of Frank Schief, Jr. argue that the $50,000 award should be apportioned equally, so that each one of them and Rebecca Davis Schief would be entitled to one fourth of the award for Frank Schief, Jr.'s pain and suffering.
On at least two occasions this Court has determined that survival damages should be shared equally by the survivors, Austrum v. City of Baton Rouge, 282 So.2d 434 (La. 1973); McFarland v. Illinois Central Railroad Co., 241 La. 15, 127 So.2d 183 (1961). As we noted in Austrum "[t]here is nothing in Article 2315 to indicate that there should be any preference among members of the primary class [" . . . the surviving spouse and child or children of the deceased, *1059 or either such spouse or such child or children. . ."] of those to whom actions survive." 282 So.2d 439. The Fourth Circuit Court of Appeal was correct when it stated in Clark v. Tenneco, Inc., 353 So.2d 418 (La.App. 4th Cir. 1978), writ refused 355 So.2d 266 (La.1978), that "Louisiana courts have refused to apply succession law to affect the determination of beneficiary under art. 2315." It is only by virtue of the provisions of Article 2315 that a surviving spouse, husband or wife, may share, and then only with the children of the decedent, in sums representing the deceased spouse's pain and suffering prior to death.
We therefore conclude that it is of no moment that a husband's tort recovery for pain and suffering falls into the community while that of a wife does not. Neither husband nor wife would be able to recover after the death of the other for pain and suffering prior to death but for Article 2315 which creates the statutory cause of action for surviving spouse and children.
Thus, of the $50,000 award for Frank Schief's pain and suffering each of the four primary class beneficiaries (the three children of Frank Schief and his widow) is entitled to one-fourth, or $12,500. Judgment will be rendered accordingly.

Decree
For the reasons stated hereinabove, the judgment of the Court of Appeal is reversed and the judgment of the district court is reinstated but amended to reduce the award to the widow which is attributable to Frank Schief's pain and suffering (her portion of the survival claim) from $50,000 to $12,500 and to increase the award to each of Frank Schief's three major children by $12,500 (their respective portions of the survival claim). As amended, the judgment of the district court is reinstated.
JUDGMENT OF COURT OF APPEAL REVERSED; JUDGMENT OF DISTRICT COURT AMENDED AND, AS AMENDED, REINSTATED.
SUMMERS, C. J., concurs.
NOTES
[*] Chief Judge James E. Bolin participated in this decision as Associate Justice Ad Hoc sitting in the place of Chief Justice Sanders, retired.
[1] The award to Rebecca Davis, widow of Frank Schief, Jr., encompasses the following amounts: $5,474.66 for funeral and medical bills; $78,616.00 for loss of future support; $50,000.00 for decedent's pain and suffering and $7,500.00 for loss of love and affection.
[2] There were plaintiffs who were not fare-paying passengers; they were persons having legal claims stemming from their relationships with fare-paying passengers.
[3] At a deposition taken six months before trial, the NOPSI driver failed or neglected to mention this stop (admittedly, the direct question had not been asked him). The driver responded at trial to an inquiry seeking to learn if he recalled not having mentioned the Cadillac's neutral ground stop at the deposition by saying: "I don't recall not having been asked the question."
[4] We assume for the sake of argument this "fact" which may have been considered unproven by the trial judge who saw and heard the bus driver testify at trial.
[5] For example, the testimony of the named testifying passenger-witness referred to in the Court of Appeal opinion is at least susceptible of an interpretation which would support an inference that she and the bus driver saw the Cadillac some time after the other passengers saw it, that is, some time after he should have.

Exactly this inference was drawn by the Court of Appeal dissenters from this testimony.
[6] Schief sustained a blow to his lower right abdominal area as a result of the collision. When examination indicated the necessity for exploratory surgery, a laparotomy was performed. An apparently traumatized and ruptured appendix, and peritonitis, were discovered. Schief died the day after surgery, ten days after the collision.