WICKER, Judge.
This appeal arises from the sustaining of the peremptory exception of res judicata and the subsequent dismissal of plaintiffs suit. Plaintiff /Appellant, Juanita E. Stone (Stone) filed suit against defendants/appel-lees, Paul E. Comeaux, Edward P. Co-meaux and their insurer, State Farm Mutual Automobile Insurance Company (State Farm) for damages she allegedly sustained as a result of a car accident involving Edward P. Comeaux’s minor son, Paul E. Co-meaux. Stone now appeals and contends that a release executed the day after the accident is invalid. We affirm.
On November 14, 1985 Stone filed an action in negligence against Paul and Edward Comeaux and their insurer, State Farm. She alleges that on or about November 15,1984 Paul E. Comeaux (the son) failed to stop and yield at a stop sign while driving Edward P. Comeaux’s (the father’s) vehicle and collided with her vehicle.
In response to her petition, defendants/appellees filed the peremptory exception of res judicata on February 28, 1986. After the hearing[1] the trial judge rendered a judgment on May 8, 1986 sustaining the exception and dismissing Stone’s claims.
Appellant now assigns the following specification of error:
That the trial court erred in finding that the release signed by her on November 16, 1984 was a valid and binding settlement and compromise of her claim.
Our jurisprudence has recognized the applicability of the exception of res judicata in eases “where a transaction or settlement of a disputed or compromised matter has been entered into between parties.” Thompson v. Bank of New Orleans and Trust Company, 422 So.2d 230, 231 (La.App. 4th Cir.1982). See also Elder Forest Products, Inc. v. B & F Lumber & Supply Company, Inc., 458 So.2d 644 (La.App. 3rd Cir.1984). Compromises are favored and are not invalidated lightly. Succession of Teddlie, 385 So.2d 902 (La.App. 2nd Cir.1980), writ denied 393 So.2d 742 (1980).
Further statutory support for the exception is found in L.S.A.-C.C. Articles 3071 and 3078. L.S.A.-C.C. Article 3071 provides in pertinent part that “A transaction *854 or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.” Such a contract must be in writing.
L.S.A.-C.C. Article 3078 states that “Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected.”
Such a transaction, however, may be rescinded pursuant to L.S.A.-C.C. Article 3079 which provides that “A transaction may be rescinded notwithstanding, whenever there exists an error in the person or on the matter in dispute. It may likewise be rescinded in the cases where there exists fraud or violence.”
Appellant contends that the release[2] is invalid because it was (1) signed in error and (2) the amount received constituted inadequate consideration for her injuries.
With regard to Stone’s contention that the amount received constituted inadequate consideration for her injuries, we note that the total amount of medical bills submitted for charges from November 16, 1984 to March 24, 1985, a four-month period, was $1,049.29.[3] State Farm asserts that it agreed to pay a maximum of $2,000.00 for medical expenses incurred within a six-month period.
The trial judge evidently considered the settlement to be adequate.[4] We cannot say that he abused his discretion in failing to find that the amount she received was inadequate since Stone made no showing that the amount was inadequate. Allen v. Schlesinger, 367 So.2d 86 (La.App. 4th Cir.1979). Moreover, a compromise agreement cannot be attacked for lesion. L.S.A.-C.C. Art. 3071; Smith v. Leger, 439 So.2d 1203 (La.App. 1st Cir.1983). Condoll v. Johns-Mansville Sale Corp., 448 So.2d 169 (La.App. 5th Cir.1984).
However, as we understand Stone’s argument, she appears to assert inadequate consideration as a means for demonstrating that she was induced to sign the release and that the release constitutes a “rush release” similar to the circumstances in Wise v. Prescott, 244 La. 147, 151 So.2d 356 (1963). In Prescott, the court recognized the high potential for error for releases executed shortly after injury.
However, the Prescott court did not hold that a release executed shortly after the injury is invalid per se. Instead, it stated that “we are justified in recognizing that high potential for error in our consideration of all the facts and circumstances connected with the execution of this type of release.” [Emphasis supplied]. Prescott, supra 151 So.2d at 362.
In the Prescott case, the jury accepted the plaintiff's testimony that she believed she was accepting a gift from someone on behalf of the defendant; that she signed a receipt for the money, and that she was *855 assured that the document had nothing to do with her case.
In the case at bar, the trial judge heard conflicting testimony with regard to Stone’s assertion that she signed the release in error. Stone testified as follows: On the morning following the accident, someone from State Farm called her and requested that she bring her car there to get it checked. She went to their office on the following afternoon. Since she received injuries to her thumb, neck, and knee she had called Dr. Levy of the Pontchartrain Bone and Joint Clinic that morning and was informed that she needed $200[5] “up front” in order to get x-rays. Thereafter, she called the adjuster, Cheryl Trei-more (Treimore), and told her that she needed money. Treimore reportedly handed her a check and asked her to sign a receipt for the $200.00. When Stone asked to read the document, Treimore responded by telling her it was not necessary. Trei-more informed her that State Farm would pay up to $3,000.00 on her medical bills. Another adjuster gave her a check for damages on her car.
Stone further testified that she can read; however, she did not read the document until the following Wednesday. At that point she called Treimore who informed her that she had signed away all of her rights.
Treimore, the Senior Claims Representative for State Farm, also testified. She testified as follows: Treimore called Stone to tell her that she would like to talk to her when she came into the office. Stone came alone and stated that her knee was sore but that she thought it was “okay”; however, she did want to have it examined by a doctor. She remembered Stone as not limping or having problems standing on that date. Treimore informed Stone that she could not pay the medical bill in advance, but for her to get treatment and then State Farm could settle when she was discharged. Stone told her no to this option and stated that she wanted to settle the claim that day. Treimore offered her $200.00 in addition to paying her medical bills for six months up to a total of $2,000.00.
Treimore further testified that Stone appeared to understand the settlement offer. When Stone asked Treimore if that would be all, Treimore told her that it would be. Treimore explained the document to Stone and Stone appeared to read it before signing it. Treimore then made a copy of the release and gave it to Stone along with $200.00. They then chatted for about an hour or more before Stone left. She specifically denied that she told Stone that there was no need to read the release. She also testified that she never received a medical report from her. Moreover, State Farm paid the medical bills which were submitted as well as property damage and car rental.
The trial judge evidently found Trei-more’s testimony to be more credible. In Canter v. Koehring, 283 So.2d 716, 724 (La.1973) the Louisiana Supreme Court held that:
[wjhen there is evidence before the trier of fact which upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error ... the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluation and inferences are as reasonable. The reasons for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to be a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts. [Citations *856 omitted] See also Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Perniciaro v. Brinch, 384 So.2d 392 (La.1980); Davis v. Owen, 368 So.2d 1052 (La.1979).
Furthermore, Stone admitted that she initiated contact with Treimore. Since the exception of res judicata was maintained, the trial judge evidently concluded that Stone understood that she was signing a release and that she was not taken unfair advantage of. See Lowery v. Anderson, 265 So.2d 644, 648 (La.App. 2nd Cir.1972); Harris v. Stockman, 197 So.2d 365 (La.App. 2nd Cir.1967). We find his conclusion to be supported by the evidence.
For the reasons stated, the judgment maintaining the exception of res judicata and dismissing Stone’s claims is affirmed at appellant’s costs.
AFFIRMED.

. Although Stone appeared for the first hearing date, she did not appear at the second date on which the hearing was completed. The trial judge made note of the fact that “she hasn’t seen fit to appear today in connection with this hearing."

. We note that the written release was never introduced into evidence; however, both parties admit that there was a signed release, the contents of the release are not at issue, and a copy of the release is attached to the exception.

. State Farm also agreed to pay a $105.00 medical bill for services incurred on March 24, 1985 on the date of the hearing.

. We note that although the trial judge asked for a medical report describing Stone’s alleged injuries that none was introduced into evidence. According to Stone's counsel at oral argument the trial judge merely glanced at the medical report which is attached to appellee’s brief.
The report by Dr. Russell Levy reflects that Stone was injured in two previous automobile accidents in 1981 and again in September 1984. The third accident, which is the one at issue in the instant case, occurred on November 15, 1984. The medical picture is even more confusing since she is reported to suffer both developmental arthritis as well as traumatic arthritis. Evidently the trial judge concluded that the medical report was of little value to him in making a determination of whether she had been taken an unfair advantage of. Certainly neither party moved for its introduction into evidence.

. Stone testified that she endorsed the $200.00 check over to Pontchartrain Bone Clinic as payment on her initial bill of $190.00. On December 26, 1984 State Farm paid $190.00 for treatment at the Pontchartain Bone and Joint Clinic.