GAUDIN, Judge.
On February 28, 1983, a fire occurred at the Flowergate Apartments, 3400 Kent Avenue, Metairie, Louisiana, causing considerable damage. Most claims were amicably settled prior to trial. The remaining lawsuits were tried in the 24th Judicial District Court in April, 1986; and on August 12, 1986, a judgment was rendered finding that Levitón Manufacturing Company, Inc. was 60 per cent responsible for the blaze and that the owners and operators of the apartment complex, insured by United States Fire Insurance Company, were 40 per cent at fault because of poor maintenance and repair work.
The trial judge further found that the contractor, sub-contractors and the Parish of Jefferson were free from negligence.
On appeal, Levitón contends that its manufactured product, a Levitón 5050 receptacle in apartment 203F, was not defective and that it (Levitón) should not have been cast in judgment for any amount (or percentage). The owners and operators argue on appeal that Levitón was 100 per cent liable; alternatively, the owners and operators say that the general contractor, sub-contractors and the Parish of Jefferson, by their acts or omissions, caused or contributed to the fire.
There were two significant factual findings by the trial judge: (1) that the cause of the fire was a defectively manufactured Levitón receptacle and (2) that the apartment owners were 40 per cent responsible due to bad maintenance of and repairs to electrical equipment.
We find that the testimony and documentary evidence support the first finding. The record, however, does not substantiate the second finding although there was some testimony about poor upkeep. Accordingly, that part of the appealed-from judgment finding the apartment owners and their insurer 40 per cent liable is set aside. Levitón is fully answerable in damages.
Appellate courts should not disturb findings of fact absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La. *41 1978), spelled out a two-part test for review of facts:
(1) The appellate court must find from the record that there is a reasonable factual basis for the findings, and
(2) The appellate court must further determine that the record establishes that the findings are not clearly wrong.
In Mart v. Hill, 505 So.2d 1120 (La.1987), the Supreme Court of Louisiana cited Arceneaux then added at page 1127:
“if an appellate court concludes that the trial court’s factual findings are clearly wrong, the mere fact that some record evidence appears which would furnish a reasonable factual basis for the contested findings does not require affirmance. Davis v. Owen, 368 So.2d 1052, 1056 (La.1979). Although appellate courts must accord great weight to the factual findings of the trial judge, these same courts have a duty to determine if the fact finder was justified in his conclusions. See, e.g., Parker v. Rhodes, 260 So.2d 706, 717 (La.App. 2d Cir.1972). An appellate court is not required, because of the foregoing principles of appellate review, to affirm the trier of fact’s refusal to accept as credible uncontradicted testimony or greatly preponderant objectively-corroborated testimony where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles. West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1150 (La.1979).”
In finding a faulty Levitón receptacle the source of the fire, the trial judge relied on the testimony of George Hero III, an expert in electrical and mechanical engineering and origin of fires; Donald Horest, an expert in the cause and origin of fires; Harold Myers, an expert in electrical and mechanical engineering; and George Flack, an expert in electrical engineering.
Mr. Hero made a full inspection and stated that the fire started at the location of a Levitón receptacle in the air conditioning closet of apartment 203F. He also examined the receptacle, and said that “... the cause of the fire was overheated contacts within the receptacle ...”
If there is a looseness or poor contact, he said, “... it has to be at the time of manufacture.”
Mr. Horest stated:
"... the fire started in Apartment 203 in Building F of the Flowergate Apartment complex. It started inside of a closet that housed the central air conditioning and air handling unit. And more specifically, the fire started at a receptacle which was a 220 volt receptacle which provided power to the air handling unit.”
He added that this was “... an exemplary case of what happens when there is an overheating at a receptacle.”
Mr. Myers said that “... the evidence is plain ...” that the Levitón receptacle was defective. He also stated:
“... the receptacle overheated as a result of the heating effect between the contacts on one of these male prongs and the female part ...
“... it heated to the extent that it burnt the bake like material here and obviously got hot enough to set the wood stud wall on fire which was adjacent to it.
“It (the fire) was obviously caused by a defect in the receptacle which allowed the part to overheat. It should not have overheated.”
Mr. Flack, too, said that the fire started because of overheating in the defective Levitón receptacle.
There were, of course, contrary opinions regarding the Levitón receptacle. For example, George Webb, an expert electrical engineer called by Levitón, said that the receptacle was not the heat source but that the fire started in a cable 14 inches from the receptacle. However, there is more than ample testimony supporting the trial judge’s finding that the Levitón receptacle had been defectively manufactured and that the fire started within the receptacle.
On the other hand, the record does not support the placing of 40 per cent of the blame on the apartment owners. In his “Reasons for Judgment,” the trial judge said:
*42 “The evidence indicates that negligent maintenance and repairs were done at the direction of the apartment manager. Certain alterations were made in the original electrical equipment. Different electrical connections were changed after the initial electrical installation work. It is unclear who may have actually performed this work. The testimony of George Hoffmann, chief electrical inspector for Jefferson Parish, indicates that the repair work done by the apartment complex was poor and that no inspector would have approved the repair work. This court concludes that the poor repair/maintenance work was a contributing factor in this fire”.
Mr. Hoffman testified about repair work done on a hot water unit after examining photographs of the unit. He said that someone had worked on the wiring and left the unit in an unsafe condition. The photographs were taken after the fire and depict, despite the repaired wiring, an undamaged unit. In any event, neither Mr. Hoffman nor any other witness said that this wiring caused or contributed to the February 28, 1983 fire.
There was some testimony and evidence showing that routine maintenance was not done by licensed electricians, that at times the repair work was not professional and that the apartment tenants often made complaints requiring service calls. Regardless, none of this testimony and evidence linked maintenance and repair work to the fire. Only one complaint, dated August 3, 1981, came from apartment 203F and it involved a problem with the condenser on the roof of the apartment building.
There was no testimony about the receptacle in apartment 203F being repaired or abused subsequent to its original installation.
Findings of fact cannot be made on speculation or suspicion alone. Our review of this record indicates that the placing of 40 per cent of the responsibility on the apartment owners has no reasonable factual basis.
Thus, the judgment in these consolidated cases is amended whereby Levitón is solely responsible for damages caused by the fire in question. Also, Levitón is to bear all costs of this appeal.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.