391 So.2d 962 (1980)
Brian A. SMITH
v.
NEW ORLEANS PUBLIC SERVICE, INC.
No. 11394.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1980.
*963 James Maher, III, New Orleans, for defendant-appellant, New Orleans Public Service, Inc.
Dale C. Wilks, New Orleans, for plaintiff-appellee, Brian A. Smith.
Before BOUTALL, SCHOTT and CHEHARDY, JJ.
BOUTALL, Judge.
This appeal arises from a judgment of the trial court awarding $1600 to the plaintiff for injuries sustained when he was struck by a bus while standing at a bus stop waiting to board the bus.
On February 23, 1978, the plaintiff Brian A. Smith, was standing at a bus stop at the corner of South Claiborne and Nashville Avenues when he was struck from the rear by a bus owned and operated by New Orleans Public Service, Inc. (hereinafter referred to as NOPSI). Smith sustained personal injuries to his left hip and back area. Upon trial of the matter, the lower court awarded judgment in favor of Smith and against NOPSI in the amount of $1600. From this judgment NOPSI has appealed suspensively.
On appeal the only issue before us concerns the liability of NOPSI. The award was not put at issue.
The evidence before us reveals that at approximately 3:38 o'clock in the afternoon on February 23, 1978 Smith was standing at the bus stop at the intersection of South Claiborne and Nashville Avenues waiting to board a bus on his way home from school. Of the four corners of this intersection, Smith was standing at the northwest corner intending to catch the So. Claiborne Avenue bus travelling a westerly direction toward So. Carrollton Ave. Several friends of the plaintiff, as well as 75 to 100 other school *964 students were all waiting to board the bus. Testimony by the plaintiff and others who were at the accident site indicates that the plaintiff was standing on the grassy area between the sidewalk and the curb of the street some 20 to 25 feet from the bus stop post, facing in a westerly direction. Before the So. Claiborne Avenue bus arrives at this particular bus stop it must make a U-turn in the neutral ground of So. Claiborne Ave. some 60 feet from the bus stop. The bus pulled away from the neutral ground area and as it approached the bus stop the plaintiff was struck from the rear by the right side of the bus in the area of the right front headlights. The plaintiff sustained personal injuries to his left hip and back area.
The plaintiff contends that the body of the bus extended over the curb thereby striking him as he stood in the boarding area between the sidewalk and the curb. NOPSI contends that its bus did not extend over the curb as the bus was in a parallel position to the curb and that the plaintiff was pushed or shoved into the oncoming bus.
As a matter of law, the duty owed by a common carrier to its passengers is stringent. It has been described as the highest standard of care, the highest degree of vigilance, care and precaution for the safety of those it undertakes to transport, or the strictest diligence. This duty includes those risks to which passengers are exposed by unsafe conditions in the boarding area. Actionable negligence exists upon the slightest breach of this duty. Green v. Taca International Airlines, 304 So.2d 357 (La.1974); Wise v. Prescott, 244 La. 157, 151 So.2d 356 (La.1963); Vaughn v. New Orleans Public Service, Inc., 314 So.2d 545 (4th Cir. 1975). Passengers waiting to board a bus or other vehicle of common carriage can presume that the boarding space is safe and free from any defects or encroachments by the carrier. Any violation of this boarding space by a common carrier, such as an encroachment in this area resulting in injury to a passenger, establishes a prima facie case against the carrier and imposes on it the burden of showing that it was free from any negligence which caused or contributed to the injury.[1]
The trial court in its reasons for judgment found that the accident occurred in accordance with the description given by the plaintiff as this was supported by the testimony of two credible witnesses and by portions of the testimony of the defendant's expert witness. This finding indicates that the body of the bus extended over the curb, thereby striking the plaintiff who was standing in the space provided for boarding passengers. The trial court further held that the plaintiff was not pushed or shoved into the side of the bus by a third person. These findings are well supported by the evidence in the record. All of the witnesses on behalf of the plaintiff testified in accordance with these findings. Testimony by the defendant's witnesses does not serve to discount the statements made by the plaintiff's witnesses, nor does it serve to support the defendant's theory that the plaintiff was pushed or shoved by a third person into the oncoming bus. The driver of the bus *965 testified that he was looking at the NOPSI superintendent who was directing his movements as he pulled into the bus stop and therefore, was not observing the plaintiff and the other passengers waiting to board the bus. The superintendent could not possibly have seen the plaintiff, although he testified otherwise, as his view was blocked by the 75 to 100 school students standing in the boarding space.
Finally, all of the defendant's witnesses, including the bus driver, the superintendent, and the expert testified that the body of the bus even when parallel to the curb will extend over it a minimum of 6 to 8 inches and may extend as much as 2 feet over the curb if the bus is on an angle. This testimony provides support for the plaintiff's theory that he was struck by the NOPSI bus when it extended over the curb into the passenger boarding space. Based on the foregoing, we hold that the findings of the trial court were not manifestly erroneous. Canter v. Koehring, 283 So.2d 716, 724 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The findings of fact established above support the conclusion that NOPSI breached the duty it owed to the plaintiff as a prospective passenger by not providing him with a safe place within which to board the bus. We further conclude that this breach of duty was the cause of the accident to the plaintiff which thereby establishes negligence on the part of NOPSI. Finally, we hold that NOPSI did not carry its burden of showing that it was free of any negligence which caused or contributed to the injury. Therefore, we are of the opinion that the judgment of the trial court should be affirmed.
A final point for consideration concerns the admittance into evidence of a statement made by one of the plaintiff's witnesses for the purpose of testing the credibility of that witness. The Louisiana jurisprudence clearly recognizes the rule that a prior inconsistent statement of a witness is admissable for impeachment purposes. The admission of the statement is limited to impeachment purposes only and can't be used as evidence of the substantive content of the prior statement. Nami v. Peninsular Fire Insurance Co. 355 So.2d 1036 (4th Cir. 1978); State v. Allien 366 So.2d 1308 (La.1978).
NOPSI contends that the statement made by Roosevelt Weatherspoon was admissable for testing the credibility of this witness. The trial court held that the statement was inadmissable because of the method used to procure the statement. In this particular instance, a representative from NOPSI went to the home of the witness and wrote down a statement according to the statements made by the witness. The witness signed this document. Subsequently, the NOPSI representative typed out the written statement and mailed it to the witness for his signature. Mr. Weatherspoon read the statement, signed it and returned it to the NOPSI representative. At trial, the witness recognized the statement and verified the signature. Under these circumstances we find that the trial judge was in error in not admitting this statement into evidence for purposes of impeachment. Our finding is very similar to the one made by the court in Schexnayder v. Zurich Insurance Co., 257 So.2d 764 (1st Cir. 1972).
Although we conclude that the trial court was in error in not admitting this statement into evidence, we do not find that its admissibility changes any of our findings or our holding. Similarly, our attention is called to a remark made by the trial court that this type of bus can protrude as much as three feet over the curbing to his own knowledge. We disregard this unwarranted remark as not being essential to our holding herein.
AFFIRMED.
NOTES
[1] In view of the stringent duty imposed by a motorist with respect to a pedestrian in a crosswalk, the duty imposed upon a common carrier with respect to a passenger in a boarding area can't be said to be overburdensome or unreasonable. In Baumgartner v. State Farm Mutual Auto Ins. Co., 356 So.2d 400, 404 (La. 1978), the Supreme Court stated:

"[3] It is well settled in our jurisprudence that the first duty of those operating motor vehicles is to keep a sharp lookout ahead to discover the presence of those who might be in danger ...
"[4,5] Our law imposes an additional burden upon motorists approaching a pedestrian crosswalk to use more than ordinary care to see what is ahead; they must expect that people may be crossing and be prepared for that possibility ... * * * `It is logical that the motorist, as against the pedestrian, bears the greater burden of careful lookout and extreme caution at locations provided for the passage of pedestrians; for it is the motorist who has the power, because of the dangerous instrument which he controls, to reduce the status of a pedestrian to that of a statistic in a split second. The pedestrian poses no such threat.'"