BARRY, Judge.
These three consolidated cases arose out of an automobile-bus collision. Judgment was rendered against New Orleans Public Service, Inc. and in favor of four of the five plaintiffs/bus passengers in the amounts of their stipulated medical expenses plus $1,000 each in general damages. The fifth plaintiff’s suit was dismissed with prejudice due to his failure to appear. All claims against Herbert Meyer, the automobile driver, were dismissed. NOPSI appeals the factual determination that the bus driver’s inattentiveness/negligence was the proximate cause of the accident. Two plaintiffs, Maxine and James Taylor, answered the appeal requesting an increase in their general damage awards.
On Friday, February 29,1980 at approximately 11:30 a.m., NOPSI bus # 481, traveling toward the River on Canal Street, was involved in an accident with an automobile driven by Herbert Meyer at the auxiliary crossing between Magazine and Tchoupitou-las Streets. The bus driver, Ellamae Antoine, and one passenger, Catherine Simon, testified the automobile turned suddenly into the side of the bus and the bus driver could do nothing to avoid the accident. Ms. Antoine said she had just left the regular stop at Canal and Magazine and was traveling at approximately 12-15 m.p.h. She emphatically stated she did not see the car or apply her brakes until impact. Ms. Simon and another passenger, Gail Domingues, agreed that the bus braked only once — at the moment of the collision.
None of the claimants witnessed the accident. The Taylors and Ms. Humbles assert *935 ed the impact and the sudden jamming of the brakes occurred simultaneously. Renee Mitchell said she felt one hard press on the brakes which caused her to fall forward and attempt to grab onto something. She did not fall to the floor until the car and bus made contact, at which time she thought the bus was traveling at less than normal speed. When asked if the speed at impact was approximately 1 m.p.h., she answered in the affirmative.
The automobile driver, Mr. Meyer, by deposition, stated he was attempting to make a “u” turn at the auxiliary crossing. He pulled approximately one foot into the bus lane, stopped, and waited for another bus to pass. He noticed bus # 481 when it was one-half block away. At approximately 50-60 feet he heard the bus brake and observed the front dip down. The brakes were released and the bus rolled into the left front fender of his car at approximately 1-2 m.p.h., causing minimal damage to his car and no bus damage. Scott McGarry, who was working nearby, witnessed the accident and agreed with the facts related by Meyer. He, too, said the bus driver could have but made no evasive maneuvers to avoid the collision. Meyer testified the point of impact was the right front bumper of the bus and the left front fender of the automobile. The bus driver related that the car struck the bus on the right side, between the wheel and front door. The investigating officer did not testify and, as the Trial Judge aptly said, “. .. the Court heard almost as many versions of how the accident happened as there were fact witnesses called.”
Public carriers are charged with the highest degree of care to their passengers and the slightest negligence causing injury to a passenger results in liability. A mere showing of injury to a fare-paying passenger establishes a prima facie case of negligence and the carrier must overcome that presumption. To counter, the defendant points to the line of cases imposing a high degree of care on the left turning motorist: “A left turn is a dangerous maneuver and the driver has a duty not to attempt the turn until it may be completed safely and he carries the burden of exculpating himself of fault should an accident occur.” Makas v. New Orleans Public Service, Inc., 410 So.2d 351, 353 (La.App. 4th Cir.1982).
The testimony was conflicting and inconsistent. The Trial Judge discounted Ms. Simon’s version (due to the presence of her child on the bus) and he obviously did not find the bus driver convincing. There was little discrepancy, however, between the facts related by Ms. Mitchell, Mr. McGarry and Mr. Meyer. Apparently the Trial Judge placed great weight on their testimony, concluding that NOPSI had not exonerated itself and Meyer had. The Trial Judge’s findings are supported by the record and proper under the circumstances.
In addition to the above issues which were specified, NOPSI argues that Mr. and Mrs. Taylor were not on the bus at the time of the accident since they were not included on the bus driver’s list of passengers. Ms. Humbles testified she spoke with the Tay-lors at the scene. The Taylors stated they reported their names to the bus driver. Other passengers, while not recalling the Taylor’s presence, admitted to the possibility that they were on the bus. The bus driver was equivocal in the number of passengers on the bus and admitted she recalled at least two persons, not the Taylors, that were not included on her list. The list made by the bus driver at the scene was not retained by NOPSI. Considering the awards and the lower court Judgment, the Trial Judge clearly rejected this serious allegation. His conclusion is not refuted by the record and we find no basis to disagree with his implicit finding that these plaintiffs were passengers on the bus when the accident occurred.
Defendant also asserts the Trial Judge erred by failing to admit a signed statement given by Renee Mitchell to NOP-SI. NOPSI contends the Trial Judge committed reversible error by making derogatory statements regarding the method of NOPSI’s claims investigators in obtaining such statements. While prior inconsistent statements are admissible for impeachment *936 purposes, Smith v. New Orleans Public Service, Inc., 391 So.2d 962 (La.App. 4th Cir. 1980), the refusal to do so here was not reversible error. Ms. Mitchell was thoroughly cross-examined on her signed statement before the Judge decided to disallow it. When a review of the record indicates the Judgment appealed is correct, it will not be overturned because of an error that does not affect the merits. Carlton v. Great American Ins. Co., 340 So.2d 678 (La.App. 4th Cir.1976) writ denied 342 So.2d 1112 (1977). Also, as no jury was involved, we fail to see any prejudicial effect due to statements made by the Trial Judge.
Maxine and James Taylor answered the appeal, requesting their general damages be increased from $1,000 to $10,000 each. According to the record, both saw Dr. Alvin Johnson for the first time two and one-half weeks after the accident for the purpose of x-rays and diathermy treatments. Two months later, May 20, 1980, both were seen by Dr. Johnson for the second and last time. Over this same two month period, Mr. Taylor received four diathermy treatments and Mrs. Taylor received three. The stipulated medicals indicate Mrs. Taylor suffered a cervical strain, a contusion of the left shoulder and upper deltoid muscle and a low back strain. Mr. Taylor’s injuries included a cervical strain, contusion and strain of the right shoulder, an upper thoracic and lumbar strain. We feel the Trial Judge, in setting quantum, discounted the alleged severity of these soft tissue injuries. Even though the awards appear minimal, they are the lowest we could award on a reevaluation in light of Reck v. Stevens, 373 So.2d 498 (La.1979).
The Judgment of the district court is affirmed at appellant’s cost.
AFFIRMED.