496 So.2d 1251 (1986)
Yvonne JOHNSON
v.
Roscoe P. BEAVERS, Stanley Magic Door Company, Aetna Life & Casualty Company, Landmark Motor Hotel, Inc., and Security Insurance Company.
No. 86-CA-203.
Court of Appeal of Louisiana, Fifth Circuit.
October 14, 1986.
*1252 Windhorst, Pastorek & Gaudry, Rene' A. Pastorek, Gretna, for Roscoe P. Beavers, Stanley Magic Door, Inc., and Aetna Life and Cas. Co., defendants-appellants-appellees.
Schoemann & Associates, Rudolph R. Schoemann, New Orleans, for Landmark Motor Hotel and Sec. Ins. Co. of Hartford, defendants-appellants-appellees.
Wiedemann & Fransen, Fritz Wiedemann, New Orleans, for Yvonne Johnson, plaintiff-appellee-appellant.
Before CHEHARDY, C.J., and KLIEBERT and NACCARI, JJ.
CHEHARDY, Chief Judge.
In this personal injury suit, the plaintiff claimed she suffered a ruptured cervical disc after being struck by a sliding door in a hotel lobby. She sued the workman who was installing the door, his employer, its insurer, the hotel and its insurer. The jury found the defendants negligent but also found the plaintiff 20% contributorily negligent. The jury awarded the plaintiff damages in the amount of $78,449.54; pursuant to the finding of comparative negligence, the award was reduced by the trial judge to $62,759.63. All the defendants have appealed, arguing no liability and excessive damages, and plaintiff has answered their appeals, asserting inadequate damages.
When the accident occurred on August 27, 1981, Yvonne Johnson was employed as foreman of a road maintenance crew for the Jefferson Parish Department of Public *1253 Works. On that day the crew was cutting grass on the neutral ground of Severn Avenue in Metairie, near the Landmark Motor Hotel. At midmorning the crew members took a break to use the restroom facilities of the Landmark.
Roscoe Beavers, an employee of Stanley Magic Door, Inc., was installing a new automatic sliding glass door in the lobby of the hotel that day. The door frame had no glass in it yet, nor had the electrical power been turned on. Beavers was on a stepladder sliding the door back and forth manually to test and adjust it. He did not see Johnson walking through the empty right door frame as he slid the left frame. The door struck Johnson forcefully on the left side, knocking her right shoulder against the right door frame and the brick wall to which the frame was attached.
Shortly after the accident Johnson complained only of arm and shoulder pain, for which she was treated for several months. She began suffering neck and back pain, which was diagnosed as a ruptured cervical disc and degenerative disc disease, and eventually she underwent a discectomy and two-level fusion of the cervical spine, resulting in 30% permanent disability. She attempted to return to work, but ultimately was dismissed from her employment because she was no longer physically capable of performing her duties.
In her lawsuit Johnson asserted that Roscoe Beavers, acting as agent for Stanley Magic Door, was negligent in failing to warn plaintiff of the work in progress and in failing to notice her as she came through the door, thus springing shut the door as she entered it. She alleged that Landmark Motor Hotel was negligent in failing to warn her of the hidden peril posed by the work on the door. The defendants denied any negligence and pleaded that the accident was the sole fault of Johnson. They also argued that her injuries resulted from a pre-existing condition rather than from the accident at the hotel.
After a four-day trial, the jury rendered a verdict in interrogatory form, in which they found Beavers, Stanley, Landmark and Johnson negligent and each party's negligence a proximate cause of Johnson's injury. They apportioned the negligence as follows: Beavers, 23%; Stanley, 36%; Landmark, 21%; Johnson, 20%. They awarded Johnson damages in the amount of $9,700 for pain and suffering and mental anguish, $52,000 for loss of earning capacity and physical disability, and $16,749.54 for medical expenses.
Beavers, Stanley and their insurer, Aetna Life and Casualty Company, assign numerous errors. They argue that the accident was entirely Johnson's fault and therefore the jury was manifestly erroneous in finding Beavers negligent and in finding Johnson only 20% negligent.
Alternatively, they urge that a corporate defendant can be liable only through its employees or agents, therefore the trial judge erred by including in the jury interrogatories an interrogatory directed to the negligence of Stanley. Concomitantly they contend the jury committed manifest error in finding any negligence on Stanley's part.
Further, arguing that Johnson's only injury was a bruised right arm, they assert that the awards of $9,700 for pain and suffering and $52,000 for loss of earning capacity and physical disability are excessive. For this reason, they maintain, the jury erred in awarding any medical expenses beyond the $100 charge for treatment of the bruised arm.
Landmark Motor Hotel and its insurer, Security Insurance Company, assert the evidence failed to prove that any negligence on the part of Landmark was a cause-infact of the accident and the resulting injuries, thus the trial judge should have directed a verdict in favor of Landmark and Security. Alternatively, they argue the court should have rendered a judgment of indemnity in favor of the hotel against Stanley for the contractor's failure to perform its work properly.
Further, they contend the judge erred in his response to the jury's inquiry as to the meaning of the word proximate because he read the jury all the charges again rather *1254 than simply defining proximate. They argue the judge failed to enter judgment in conformity with the verdict because in the jury's initial answers they stated the negligence of the hotel did not proximately cause the accident and resulting injuries. Defendants claim the judge erred in directing the jury to deliberate further and to revise their initial verdict.
Yvonne Johnson, answering the appeal, asserts that the jury erred in finding her 20% negligent and that the awards for pain and suffering and for loss of earning capacity and disability were inadequate and should be increased.
The primary bone of contention is Yvonne Johnson's credibility. There is no question that the accident occurred; Johnson was indeed struck by the door Beavers was installing. The disputes concern the severity of the blow, the relationship of the blow to Johnson's disc condition, the adequacy of the defendants' efforts to warn or protect the public against the hazards arising during the installation of the door and whether plaintiff was contributorily negligent or assumed the risk when she entered through the partially installed door.
The defendants point out that Johnson had misstated her date of birth on several employment applications in the past (by making herself two to four years younger than her actual age). Defendants dispute Johnson's version of the accident because she testified that as she passed through the door, it struck her rapidly three times with enough force to lift her feet off the ground, keeping her suspended in the air as the door struck her. (Considering that Johnson weighed over 200 pounds at the time of the accident, her assertion is hardly credible.)
Defendants also point to variations between Johnson's testimony and that of Beavers concerning his placement of barriers to prevent passage through the doorway. The door being installed was inside the foyer of the hotel, about six feet from the exterior doors. Johnson stated that as she came into the foyer she saw Beavers working on the door, but she denied seeing any ladder. She saw a five-gallon bucket, with a board leaning against it, placed in front of the left half of the new doorframe. She saw no other objects blocking the doorway. That was why she chose to go through the right half of the frame, since there was no glass in it.
She said that as she passed through the right frame, the frame on the left hit her three times and left her groggy. She said the door "just picked me up.... I was just in the air." She also said that when the door hit her, Beavers was not by the door but was beyond it by the hotel desk talking to two men. She said no one pushed or slid the door, but that it operated automatically.
In contrast, Beavers testified that he had placed an ashtray stand, a four-foot potted plant and a chair in front of the right half of the door frame but had not blocked off the left half at all. He denied placing any five-gallon bucket in front of the left frame. He also said he had placed his stepladder next to the center of the doorframe, on the inner side, and was standing on the ladder sliding the left door back and forth. He stated that the electrical connections to the door had not yet been made.
He did not see Johnson as she entered because he was looking up at the mechanism of the track on which the door hung. He was sliding the door slowly by hand, and had slid it only once when he heard Johnson say to him, "You hit me with the door." He said she did not complain of being hurt.
Three workers who had been members of Johnson's crew that day also testified. Each of them had gone into the hotel before Johnson to use the restroom. Their versions of what barriers were in front of the doorway varied from both Johnson's and Beavers'. Some said they saw the five-gallon bucket as well as the ashtray, plant and chair; some saw the bucket; some only the other items. These objects did not appear to them to obstruct passage. Two said they saw a stepladder, but that it was leaning against the wall on the left. Nonetheless, each of them separately had *1255 walked through the right side of the doorframe on their way into the hotel. None of them had mentioned anything about the door installation work to Johnson, who went in some minutes later.
The executive secretary for the hotel testified she was standing inside the lobby several feet away from the new doorframe and observed the incident. She said that Beavers was on a stepladder by the door, that the door hit plaintiff once and that plaintiff seemed to trip over the doorframe and fall forward but caught herself. The secretary did not notice any objects blocking the doorway.
The defendants also assert that Johnson's testimony is unreliable because there were discrepancies in her recollection of the dates she saw doctors and because she did not mention certain previous injuries to some of the doctors.
It is well-settled that the conclusions of the trier of fact are not to be disturbed absent manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973). That is, the appellate court should not disturb the factual finding unless it is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
"[T]he reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." Canter v. Koehring Company, supra, at 724.
The apparent exaggerations or inconsistencies in Johnson's testimony are not so great as to negate the basic facts of the accident and injury. Each of the witnesses varied in his or her recollection regarding the placement of objects near the door and other details. The contrast in the testimony simply illustrates that the average person is not observant of details. Considering all the testimony we find no manifest error in the jury's credibility determinations.
We give short shrift to the defendants' argument that Beavers was not negligent. His efforts to blockade the doorway were inadequate: not only Johnson, but her four crew members ahead of her, walked through the right side of the new doorframe. There were neither obvious barricades nor signs warning of the danger. Further, Beavers himself said he had not intended to block the doorway completely. He stated he spoke with the hotel manager before beginning work and informed him he would attempt to interfere as little as possible with normal passage through the door. In addition, he was clearly negligent in failing to observe the plaintiff passing through the door as he worked on it.
We agree that the plaintiff was contributorily negligent in failing to take more care in entering the doorway, when she could observe construction work underway. However, we find no manifest error in the assignment of 20% negligence to her.
Defendants argue that there was an arch to the side, between the exterior doorway and the doorframe being installed, through which plaintiff could have detoured to get to the restroom. We find it significant that not only Johnson but also all of her crew members chose to enter through the new doorframe rather than the arch. If the defendants desired the public to use an alternate route they could have taken precautions to ensure that route would be used.
Stanley contests the finding that it was negligent, asserting the trial judge should not have included any interrogatories concerning Stanley's negligence in the jury verdict form. Stanley theorizes that because a corporation is an intellectual beinga legal entity rather than a corporeal personthat must operate through human beings, it cannot be held liable for negligence unless a specific agent or employee is shown to have been negligent.
Beavers was the only Stanley employee who testified at trial. He said he had worked for Stanley for 18 years; that at *1256 one time he had been provided with some kind of warning signs but that these had been lost; that he had never been given safety instructions by anyone at Stanley; that he had never been given barricades or replacement warning signs by anyone at Stanley. He did not name any Stanley employees or supervisors.
Stanley argues,
"A corporation is a mere legal fiction. It cannot act except through its officers and agents such as employees. But, a corporation as a general rule is liable like a natural person for the torts of its officers or agents acting within the scope or apparent scope of their authority.... Thus, in this case, Stanley, undisputably [sic] a corporation[,] could not be negligent. Only those such as officers, employees and agents, human beings in short, could be negligent, and the corporation could only be liable vicariously for the negligence of an officer, employee or agent."
Stanley's thesis is wrong. The basis of all tort law is the existence of a duty toward other persons. When that duty is violated, a tort has been committed. Stanley is saying, in effect, that unless the plaintiff can name a natural person employed by Stanley who violated a duty toward her, no duty existed in Stanley Magic Door, Inc., itself to protect her from the risk of the harm she suffered.
A corporation may be a noncorporeal being but it is nonetheless a legal person. It may sue and be sued, it possesses most of the legal rights of a natural person and it is subject to most of the legal obligations. Paramount among the latter is a duty to protect members of the public from injuries arising out of the negligence of corporate employees. Plaintiff's failure to pinpoint specific employees who failed to instruct Beavers in safety procedures or to provide him with safety equipment goes to the weight of the evidence but does not obviate the existence of the corporation's duty to protect the plaintiff.
Accordingly, we find no error in the jury interrogatory concerning Stanley's negligence. Nor do we find any manifest error in the jury's apportionment of 36% negligence to Stanley.
Nor do we find manifest error in the jury's conclusion that Landmark was negligent. The hotel owed a duty to its invitees to use reasonable care to protect them from foreseeable harm. This duty includes an obligation to warn invitees of the danger. Richoux v. Hebert, 449 So.2d 491 (La.App. 3 Cir.1983). Landmark had no specific agreement with Stanley concerning safety measures and thus cannot be held to have delegated its duty to protect its invitees. We conclude the jury's assessment of 21% negligence against Landmark was not clearly wrong.
Landmark asserts the trial judge should not have entered judgment against it because the jury was confused. During the jury's deliberations, they sent a note to the judge asking the definition of proximate. Because the attorneys could not agree on which charges to use in response to the query, the trial judge elected to reread the entire jury charge to the jurors.
When the jury reached a verdict, they answered the interrogatories concerning Landmark by finding Landmark negligent and assigning a percentage of negligence, but also finding that Landmark's negligence was not a proximate cause of the accident. Over the objection of Landmark's counsel, the judge ordered the jury to redeliberate. On their return they rendered the final verdict that was incorporated into the judgment now before us.
We have reviewed the charges given to the jury and find no error in the definition of proximate cause contained therein. Nor do we find the judge's decision to reread all the charges erroneous. Considering the refusal of counsel to agree as to which individual charges should be recited in response to the jury's query, the judge's action was appropriate.
Further, even if the judge's manner of handling the jury were incorrect, we have the authority to review the record independently without remanding the case *1257 for retrial. See Gonzales v. Zerox Corporation, 320 So.2d 163 (La.1975). We are convinced, as mentioned above, that Landmark was negligent in failing to warn plaintiff of the danger of the door installation.
Finally, we address the issue of damages. Johnson asserts the award of $9,700 for pain and suffering was so low as to shock the conscience. She cites other awards ranging from $125,000 to $250,000 for similar injuries and asserts the award is far below the lowest amount reasonably within the court's discretion. The defendants, vigorously contending that plaintiff's only injury was a bruised arm and that her cervical disc problems were not related to this accident, argue the general damages award was too high.
It is true that plaintiff was involved previously in several minor on-the-job accidents. It is also true that she had complained of neck and back pain several years prior to the incident here. However, she had reported no symptoms for some time before the injury here. Further, there is no evidence the other on-the-job accidents resulted in any injury. The jury obviously believed her disc problem was aggravated by the accident at the Landmark. Considering the medical evidence, we do not find them to be clearly wrong.
We agree that $9,700 is a low award for pain and suffering from a cervical discectomy and two-level fusion resulting in a 30% permanent disability. We are required, however, to bear in mind the great discretion vested in the jury by law. "The primary purpose of the judge or jury in fixing the award in a personal injury case is to adequately compensate the injured person for his injury under the facts shown to exist in his case." Gaspard v. LeMaire, 158 So.2d 149, 158 (La.1963).
In the Reck v. Stevens, 373 So.2d 498 (La.1979), our Supreme Court emphasized that a reviewing court may not question a trial court award as inadequate or excessive without looking first at the individual circumstances of the case. Considering this mandate, we cannot find a clear abuse of the jury's discretion in the general damages award. We are struck by the exaggerations and inconsistencies in the plaintiff's testimony. Although these are not so manifest as to warrant a reversal on liability, we conclude they affected the jury's belief in the amount of suffering endured by the plaintiff and that the low award reflects the jury's attitude.
Under the individual circumstances of this particular case, therefore, we do not find the damage award so low as to require us to adjust it.
The plaintiff also finds fault with the $52,000 award for loss of earning capacity. She points out that her economist testified that as of the date of trial she had lost wages of $42,489, based on her $5.92 hourly wage. The economist testified further that, assuming plaintiff would have continued to work until age 65, her future lost wages would be $98,250. Thus, the total calculation by plaintiff's expert was $140,739.
Obviously the amount awarded by the jury was less than $10,000 over the amount of her past lost wages. However, as pointed out by the defendants, the jury likely believed that plaintiff was able to perform some work other than the job she was in at the time of her injury. The medical evidence did not contradict such an assumption. Further, the jury may well have concluded that plaintiff would have been unlikely to work to age 65 despite the disc injury; the evidence established that plaintiff was obese (five feet two inches, 220 pounds) and suffered from hypertension, for which she was being treated at the time of the accident. Accordingly, we consider the award for loss of earning capacity to be within the jury's discretion.
For the foregoing reasons, the judgment of the district court is affirmed. Costs are assessed against the defendants, in proportion to the percentages of liability found by the jury.
AFFIRMED.