681 So.2d 381 (1995)
Adrienne JONES
v.
HYATT CORPORATION OF DELAWARE, XYZ Insurance Company, et al.
No. 94-CA-2194.
Court of Appeal of Louisiana, Fourth Circuit.
July 26, 1995.
Opinion Granting Rehearing, September 26, 1996.
*383 Sonje W. Wilkerson, Iris A. Tate, Wilkerson, Tate & Williams and Russ M. Herman, Stephen J. Herman, Herman, Herman, Katz & Cotlar, L.L.P., New Orleans, for Plaintiff/Appellee.
Craig R. Nelson, Christina P. Fay, Ward, Nelson & Pelleteri and Martin A. Stern, Jeffrey E. Richardson, Adams and Reese, New Orleans, for Appellant.
E. Fredrick Preis, Jr., James M. Garner, Martha M. Young, McGlinchey Stafford Lang, New Orleans, for Amicus Curiae.
G. Bruce Parkerson, J. Marie Rudd, Phelps Dunbar, L.L.P., Martin A. Stern, Donald C. Massey, Jeffrey E. Richardson, Adams and Reese, New Orleans, and Albert C. Miranda, Elizabeth M. Truett, LeBlanc, Miranda & deLaup, Metairie, for Amici Curiae.
*384 Before BARRY, BYRNES and LANDRIEU, JJ.
BYRNES, Judge.
Adrienne Jones brought this personal injury action against Hyatt Corporation of Delaware (Hyatt) for damages sustained in a slip and fall accident on March 18, 1989, while walking through a corridor at the Hyatt Regency Hotel in New Orleans. The case was removed to federal court, but was later remanded to state court through proceedings that are not at issue on this appeal.
A jury found Hyatt liable to plaintiff for $40,000.00 in past medical expenses; $30,000.00 future medical expenses; $45,000.00 past lost wages and benefits; $20,000.00 loss of personal services; $400,000.00 future lost wages, including earning capacity and all benefits; and $400,000.00 general damages for a total award of $935,000.00. We amend and affirm as amended.
The primary complaint of appellant, Hyatt, is that it was error for the trial court to instruct the jury that Hyatt as an innkeeper "owes his guests a high degree of care and protection." Hyatt objected to this charge and further objected to the failure to charge the jury that Hyatt should only have been required to exercise ordinary reasonable care. Hyatt contends that because the trial court instructed the jury to require an erroneously high standard of care it is now entitled to a de novo review of the record on appeal.
Hyatt argues that the cases imposing a "high" standard of care on the innkeeper instead of ordinary reasonable care are limited to damages arising out of third party criminal activity. Kraaz v. LaQuinta Motor Inns, Inc., 410 So.2d 1048 (La.1982); Banks v. Hyatt Corp., 722 F.2d 214 (5 Cir.1984). In Kraaz the court stated at 1055:
The innkeeper's position vis-a-vis his guests is similar to that of a common carrier toward its passengers. Wilson v. Iberville Amusement Co., 181 So. 817 (Orl.App.Ct.1938). Thus, a guest is entitled to a high degree of care and protection. See Galland v. New Orleans Public Service, Inc., 377 So.2d 84 (La.1979), and Green v. TACA, 304 So.2d 357 (La.1974). [Emphasis added.]
Although the Kraaz case involved damages caused by third party criminal activity, the rationale behind the standard of care adopted by the Kraaz court as quoted above was not based on the criminal nature of the activity, but upon an analogy to the standard required of common carriers having nothing to do with criminal activity. See also: Franklin v. Paul Dupuis & Associates, 543 So.2d 970 (La.App. 3 Cir.1989), writ den. 545 So.2d 1042 (La.1989). The Galland case cited above by the Kraaz court involved a lady who was injured as she was alighting from a bus. No criminal activity was involved. The Galland court imposed the following standard and burden on the common carrier:
It is well established that common carriers are charged with the highest degree of care to their passengers and that the slightest negligence causing injury to a passenger will result in liability. Wise v. Prescott, 244 La. 157, 151 So.2d 356 (1963); Gross v. Teche Lines, 207 La. 354, 21 So.2d 378 (1945). Further, where there is proof of injury to a fare-paying passenger, the burden shifts to the defendant carrier to show that he is free from negligence. Wise v. Prescott, supra; Carter v. New Orleans Public Service, Inc., supra. [305 So.2d 481, 483 (La.1975) ]. It is here that the court of appeal erred when it stated that the plaintiff must not merely prove that the injury was caused by an incident, occurrence or condition which is attributable to the carrier before the presumption is created in favor of the plaintiff. Properly stated, the rule is that the mere showing of injury to a fee-paying passenger on a public conveyance and his failure to reach his destination safely establishes a prima facie case of negligence and imposes the burden on the carrier of convincing by overcoming the prima facie case. Wise v. Prescott, supra.

Galland, 377 So.2d at 85.
Likewise, the Green case also cited by the Supreme Court in Kraaz involved a common carrier passenger injured in a fall. No criminal activity was involved. The Supreme *385 Court in Green, 304 So.2d at 359, described the applicable standard:
The duty owed by a common carrier in Louisiana to its passengers is stringent, whether it be termed "the highest standard of care," [footnote omitted] "highest degree of vigilance, care and precaution for the safety of those it undertakes to transport," or "the strictest diligence."
The Banks case cited by Hyatt involves innkeeper liability for third party criminal acts, but the Banks court did not limit the high standard of care to third party criminal acts. In Banks, 722 F.2d at 221, the court stated that: "Under Kraaz, innkeepers owe a high degree of care, which embraces a duty to take reasonable precautions against criminal assaults on guests." The Banks court was making the point that the duty to take precautions against third party criminal acts was only one aspect of the high degree of care owed by the innkeeper in connection with tort liability generally.
The Banks court also noted that the theory of innkeeper tort liability is an expanding field. Cases expanding the scope of the duties imposed on innkeepers cause previous cases calling for a more limited scope to become outdated quickly. In this regard we note that the innkeeper liability cases cited by Hyatt ante-date the Supreme Court's pronouncement in Kraaz and are no longer controlling.
In Brown v. Harlan, 468 So.2d 723 (La. App. 5 Cir.1985), dismissal granted, writ not considered 472 So.2d 26 (La.1985), the court found error in jury instructions that imposed only a standard of ordinary care on an innkeeper. No criminal activity was involved. The Brown court quoted from Banks explaining that the higher standard "is no doubt rooted in the belief that business patrons of innkeepers, like those of common carriers and unlike those of other businesses, have entrusted their personal security to the innkeeper." Brown at 727.
Sutter v. Audubon Park Com'n, 533 So.2d 1226 (La.App. 4 Cir.1988), writ den. 538 So.2d 597 (La.1989) fails to support the proposition for which it is cited by the defendants. In Sutter the court considered for the first time the liability of a public park for third party criminal activity. The Sutter case has no bearing on the instant case because the Sutter court did not consider either in dicta or by implication an innkeeper's standard of care for general tort liability.
On the other hand, Lorio v. The San Antonio Inn, 454 So.2d 864 (La.App. 5 Cir.1984), applied the Kraaz "high degree of care" where no third party criminal activity was involved. In doing so it was not inconsistent for the Lorio court to cite Brasseaux v. Stand-By Corp., 402 So.2d 140 (La.App. 1 Cir.1981), writ den. 409 So.2d 617 (La.1981), for the proposition that inspections of the premises and mechanical equipment are duties owed by the innkeeper; and to cite Kauffmann v. Royal Orleans, Inc., 216 So.2d 394 (La.App. 4 Cir.1968), for the proposition that the innkeeper will be held to have constructive knowledge of dangerous conditions that existed long enough that they should have been discovered, even though both of these cases ante-dated Kraaz.
In Gregor v. Constitution State Ins. Co., 534 So.2d 1340, 1343 (La.App. 4 Cir.1988), writ den. 536 So.2d 1238 (La.1989), this court considered the standard of care owed to a claimant who fell from defendant's roof: "An innkeeper owes his guest a high degree of care and protection." This means a "greater than ordinary standard of care." Id.
Hyatt cites cases involving the duty of merchants, but merchants are governed by a specific statute, LSA-R.S. 9:2800.6, which does not apply to innkeepers. See Neyrey v. Touro Infirmary, 94-0078 (La.App. 4 Cir. 6/30/94), 639 So.2d 1214. Additionally we note that LSA-R.S. 9:2800.6 applies only to causes of action arising on or after September 1, 1990, the effective date of the act.
In Johnson v. Beavers, 496 So.2d 1251, 1257 (La.App. 5 Cir.1986), the court stated that "the hotel owed a duty to its invitees to use reasonable care" which Hyatt notes is a lesser standard than a "high degree of care." However, there is no indication that the Johnson court chose "reasonable care" over "high degree of care." As the court found the innkeeper liable under the lesser standard of care there was no need for the court to decide whether the innkeeper would have *386 been liable under the more demanding "high degree of care" standard and the question never came up.
Based on the foregoing, we find no error in the jury instruction requiring "a high degree of care and protection."
There is no presumption of fault simply because a person falls. Kinchen v. J.C. Penney Co., Inc., 426 So.2d 681 (La.App. 1 Cir. 1982). Defendants contend that "because plaintiff did not put on any evidence to prove a defect in the lighting or the floor surface, the sole explanation for the jury verdict must be their belief in the presence of a `quarter size' water spot." Assuming for purposes of argument that this contention is correct, defendants then argue that such a belief must be manifestly erroneous because the "only witness who testified regarding the alleged water spot was plaintiff's sister-in-law, Ancar, who said she saw the spot, but before she could warn plaintiff, she had gone through it and fallen down." Defendants assert that Ancar's testimony was so unreliable that it was error for the jury to credit it. Ancar's testimony is not so contradicted by documents or objective evidence, and her story in not so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story. Rosell v. ESCO, 549 So.2d 840 (La.1989). Defendants imply strongly that Ancar's testimony was not impartial, and for that reason should not be credited. Although this court might have viewed the evidence differently had it been the trier of fact, we cannot say that the jury's finding was unreasonable in light of the record reviewed in its entirety. There is no indication in the record that the jury failed to consider the relationship between plaintiff and Ancar in making its credibility determination. It is a certainty that the jury had the opportunity, which this Court does not, to observe the variations in Ancar's demeanor and tone of voice which it could then weigh against her relationship to the plaintiff in making its credibility determination. We cannot say that a jury decision to credit Ancar's testimony was manifestly erroneous.
As the plaintiff could not state with certainty what she slipped on, defendants cite Foster v. Walgreen's Drug Stores, Inc., 468 So.2d 656 (La.App. 4 Cir.1985) and Hanks v. Petroleum Club of Lafayette, 553 So.2d 1076 (La.App. 3 Cir.1989) in support of their contention that plaintiff's testimony was insufficient to prove causation. Those cases are inapposite because they were based solely on the plaintiff's inconclusive testimony. In the instant case there is a witness, Ancar, who testified to the presence of a foreign substance on the floor. Keith Caruso, the assistant manager who came to investigate the fall immediately after it occurred, testified that the plaintiff told him that she had slipped on something.
Defendants assert that "plaintiff failed to prove inadequate maintenance." Under the facts of this case, that is not plaintiff's burden. Once plaintiff has demonstrated the existence of a foreign substance creating a hazard, the burden shifts to the defendant to show adequate maintenance. It is not sufficient that the defendants show that they had a maintenance program. They must show that they followed that program. Duckett v. KMart Corp., 94-0579 (La. 10/17/94), 645 So.2d 621; Neyrey v. Touro Infirmary, 94-0078 (La.App. 4 Cir. 6/30/94), 639 So.2d 1214. Whether the maintenance was adequate is a matter for the jury to decide. The jury was evidently not satisfied with the Hyatt's maintenance procedures under the circumstances. The jury could have concluded that the Hyatt had a clean-up program, but that it was either inadequate in the location where plaintiff fell, or it was not properly followed. The record would permit either conclusion. The jury could have reasonably concluded that hotel employees responsible for policing such hazards were not sufficiently diligent in their precautions against small hazards that guests might not be expected to notice. A large puddle would probably have been more visible thereby making it perhaps more difficult for the jury to have found the plaintiff free from fault. Reviewing the record as a whole we cannot say that the jury's finding was manifestly erroneous.
Likewise we find no manifest error in the jury decision to assign no contributory negligence to the plaintiff. Cases have held that a pedestrian on a sidewalk or customer in a *387 store is not held to the same standard of vigilance as would be necessary in traversing a jungle. Johnson v. New Orleans Dept. of Streets, 94-1542 (La.App. 4 Cir. 2/23/95), 650 So.2d 1216. Hotel guests have even less reason to expect a need for vigilance when traversing hotel corridors than do pedestrians on sidewalks or customers in stores. Hotel owners know that their patrons come for social discourse and social intercourse and should not have to anticipate the same kind of obstacles one might expect to encounter on a sidewalk which are known to be frequently uneven, cracked or littered, or a store where spills are more common and merchandise is known to fall into the aisles. There is a rational basis for holding the innkeeper to a higher standard than the merchant.
Hyatt argues that the failure of the jury to consider the effects of two subsequent auto accidents and a subsequent fall at home when determining causation and apportionment of fault was error, citing Davis v. Wal-Mart, Inc., 594 So.2d 557 (La.App. 3 Cir. 1992), writ den. 600 So.2d 608 (La.1992) is inapposite. In Davis at 564 and 565 the court found that:
Insofar as plaintiff's physical complaints are concerned, we find her lacking in credibility. She denied any previous neck problem and denied a fall subsequent to her fall at Wal-Mart in June 1986. Evidence admitted at trial proved otherwise on both issues.
Further, the medical records from plaintiff's former and present physicians and from the various hospitals where she obtained treatment speak for themselves. They show no marked increase in doctor's visits or hospitalizations between June 23, 1986, the fate of her alleged fall, and September 4, 1986, the date of her subsequent serious fall in the kitchen of her home.
* * * * * *
In sum, plaintiff neither increased her visits to her physician, nor changed her medication profile, nor proved a recognizable link between her June 1986 fall and her neck surgery in September 1987, especially considering her intervening fall in September 1986. [Emphasis added.]
The plaintiff in Davis had six back surgeries prior to the time she allegedly sustained the injuries complained of in the Davis suit and was still being treated for those preexisting back problems at the time she filed suit. Unlike the plaintiff in the Davis case, Adrienne Jones' medical treatment increased markedly after her fall at the Hyatt. Adrienne Jones did not have a prior medical history to which her problems could be attributed. Her testimony was not self-contradictory and inconsistent. She did not deny that she had been involved in subsequent automobile accidents. Dr. Watermeier testified that it was his opinion that her medical problems arose as result of the fall at Hyatt and not as the result of some subsequent fall or auto accident. Dr. Watermeier's opinion is supported circumstantially by the fact that the pattern of plaintiff's visits for medical treatment did not change in any material way after the subsequent automobile accidents. The Davis opinion makes no mention of any favorable medical testimony such as Dr. Watermeier gave on behalf of Adrienne Jones.
Plaintiff cites Nathan v. Home Depot, 522 So.2d 712 (La.App. 5 Cir.1988), writ den. 530 So.2d 84 (La.1988) because in that case the jury rejected Dr. Watermeier's testimony in favor of that of other experts. However, the court did not say that the jury was right, only that it was not clearly wrong:
.... Where the testimony of expert witnesses differs, it is largely a matter of fact for the jury to determine the most credible evidence, and a finding of fact in this regard will not be overturned unless manifest error appears in the record. Nathan at 715.
The court in Nathan implies strongly that had the jury been swayed by Dr. Watermeier's testimony to reach the opposite result, that that result would also have withstood a manifest error standard of review. Nathan is also distinguishable because it involved a prior accident and a pre-existing condition. In the instant case the defendant is arguing about the effect of subsequent accidents.
Likewise, Livaccari v. United Jewish Appeal, Inc., 126 So.2d 67 (La.App. 4 Cir.1961), *388 fails to support Hyatt's argument. In Livaccari, 126 So.2d at 70 the court noted that "none of the three doctors who saw the plaintiff after the second accident was able to say whether these injuries to the right knee and back were caused by the first or by the second accident.... The other doctor, who saw the plaintiff after the first accident and did not see him after the second, did not feel that his injuries were very serious and had discharged him prior to the second accident." (Emphasis added.) Dr. Watermeier's testimony in support of plaintiff distinguishes the instant case from Livaccari.
Nor does Sanders v. Collins, 551 So.2d 644 (La.App. 1 Cir.1989), writ den. 556 So.2d 1261 (La.1990), persuade us to favor Hyatt's position on damages because the Sanders quantum analysis was based on a specific jury finding that the plaintiff was injured in the subsequent accident. No such finding was made in the instant case. Although the Sanders jury found that the plaintiff was injured in the subsequent accident it failed to determine the amount of damages plaintiff sustained as a result of being injured in the second accident. The appellate court was compelled to do a de novo review to determine the amount of those damages which required an apportionment between the two accidents. There are no similar jury failings in the instant case which would compel an apportionment of damages among different accidents.
Hyatt complains that the jury award of $400,000 for general damages was excessive. Our role in reviewing general damages is not to decide what award would be appropriate, but rather to review the exercise of discretion by the trier of fact. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993) cert. den., Maritime Overseas Corp. v. Youn, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Only after a determination of an abuse of discretion is a resort to prior awards appropriate, and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. Id. The discretion vested in the trier of fact is great and even vast. Id. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Id. at 1261.
As a result of the injuries plaintiff sustained when she fell at the Hyatt, she has endured years of pain and can reasonably be expected to continue to do so. She suffered for several years until she felt she could endure the pains, which she described as being like electric shocks, no longer and reluctantly consented to the operation she desperately hoped could be avoided. She underwent an anterior cervical fusion operation on her neck.[1] The pain and discomfort that she had to endure in connection with this operation was compounded by the fact that in order to perform the operation Dr. Watermeier had to take a bone graft from her hip. The resulting hip wound was the source of substantial additional pain and disability. She has been forced to curtail her vocational, recreational, and domestic activities. Because of the nature of her work in the field of "special ed" which often involved emotionally disturbed children her physical pains and limitations were especially intrusive.
The award of $400,000.00 is thus "not obviously the result of passion or prejudice", and it bears a reasonable relationship to the elements of proved damages. Id. at 1261. We cannot conclude from the entirety of the evidence in this record that a rational trier of fact could not have fixed the award at the level set by the jury, or that this is one of those exceptional cases where the award is so extreme as to be contrary to right reason. Id. at 1261. See also Weatherford v. Commercial Union Ins., 94-1793 (La. 2/20/95), 650 So.2d 763.
The evidence cited by Hyatt in support of its contention that the plaintiff was contributorily negligent was not so compelling as to require this court to find the jury conclusion to the contrary manifestly erroneous. Plaintiff's failure to notice the liquid on the floor was excusable under the circumstances. The arguments that the true cause of plaintiff's *389 fall was an ankle sprain of some two or more weeks earlier and her unwise choice of high "spike" heeled shoes are unpersuasive. Plaintiff testified that she was wearing "wedged" heels and Hyatt's witness said that he did not know the difference between the two types of heels. Dr. Logaglio testified that his records showed that his nurse had noted that the plaintiff had some ankle swelling on March 6, 1989, two weeks prior to her fall at the Hyatt. Dr. Logaglio noted no clinical findings regarding plaintiff's ankle. He considered the swollen ankle "minor" and saw no problem in the way that the plaintiff walked.
The award of $40,000.00 for past medical expenses was excessive. Plaintiff argues that "Dr. Watermeier testified that the past medical expenses for the plaintiff totals over $40,000 ..." Our reading of Dr. Watermeier's testimony reveals only $23,260.80 of past medical expenses. The parties stipulated[2] that Dr. Charles April had bills totalling $688.10; Dr. Philip Logaglio had bills of $475.00; and Dr. Thomas Cashio had bills of $310.00. These stipulated bills aggregated with the $23,260.80 to which Dr. Watermeier testified, brings the total to $24,733.90. This is the maximum recovery for past medical expenses that can be supported by the record.
The award for future medical expenses of $30,000.00 was excessive. Plaintiff must prove that future medical expenses will be incurred, even though such costs cannot be fixed with precision. Smith v. Two R Drilling Co., Inc., 606 So.2d 804, 811 (La.App. 4 Cir.1992), writ den., 607 So.2d 560 (La.1992). Future medical expenses must be established with some degree of certainty. Id. Awards for future medical expenses must be supported with medical testimony and estimation of probable costs. Id. The bulk of the award for future medical expenses can only be ascribed to a belief by the jury that it was more probable than not that the plaintiff would have to undergo another operation in the future. Such a conclusion is not justified by Dr. Watermeier's testimony: "I think it is a possibility only at this time. I cannot say that we would have to do it." This testimony is insufficient to establish that it is more probable than not that the plaintiff will need another operation.
Dr. Watermeier also testified that he charged $150.00 for each visit. He testified that he would need to give the plaintiff injections from time to time in the future and that he would have to perform various tests. We recognize that the calculation of future medical expenses is highly speculative and not susceptible of calculation with mathematical certainty. Young v. Armadores de Cabotaje, S.A., 617 So.2d 517, 540 (La.App. 4 Cir.1993), writ den., 625 So.2d 170 and 171 (La.1993) and cert. den. by Empresa Nacional Siderurgica, S.A. v. Young, 510 U.S. 1117, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994). The highest reasonable award for future medical expenses that can be supported by the record as a whole is $4,000.00.
The award for past lost wages was $44,536.00. That figure was based on a calculation of plaintiff's expert economist, Dr. Wolfson. Defendants claim that they should be given credit for plaintiff's sabbatical pay which would limit plaintiff's claim for past lost wages to only $9,485.00.
We disagree. Defendant is not entitled to credit for the sabbatical pay received by the plaintiff. Such pay should be treated as compensation from a collateral source. Plaintiff would not have had to use her sabbatical for health reasons had she not been injured. A tortfeasor may not benefit by payments made to an injured party to which the tortfeasor has not contributed. See Friedmann v. Landa, 573 So.2d 1255 (La.App. 4 Cir.1991).
The awards of $400,000.00 for lost future wages and $20,000.00 for loss of personal services were not excessive. In view of Dr. Wolfson's testimony had the jury awarded somewhat more in each category we could not say that such awards would have been so high as to be manifestly erroneous.
*390 For the foregoing reasons the judgment of the trial court is amended to reduce the award for past medical expenses to $24,733.90. The judgment is further amended to reduce the award for future medical expenses to $4,000.00. In all other respects the judgment of the trial court is affirmed.
AFFIRMED AS AMENDED.
Before BARRY, BYRNES, CIACCIO, WALTZER and LANDRIEU, JJ.

ON REHEARING GRANTED
LANDRIEU, Judge.
We grant rehearing to consider the issue of whether the jury was correctly instructed that a hotel owes a "high" standard of care to its guests. In this case, the plaintiff slipped on a spot of water on the waxed, brick floor of the corridor outside a trade show that she was attending at the Hyatt Hotel (Hyatt). See Jones v. Hyatt Corp. of Delaware, (La. App. 4th Cir.1995) 681 So.2d 381. After a trial on the matter, the jury was instructed that "[a]n innkeeper owes his guests a high degree of care and protection." We grant rehearing to determine whether this instruction was correct.
A trial judge has the duty to charge the jury as to the applicable law and require that the jury consider only the correct law. Barnett v. New Orleans Public Service Inc., 489 So.2d 452 (La.App. 4th Cir.1986). When a jury is given incorrect instructions in the law, no weight should be accorded the judgment of the trial court which implements the jury verdict. McLean v. Hunter, 495 So.2d 1298, 1304 (La.1986), on remand to, 510 So.2d 771 (La.App. 1st Cir.1987), writ denied, 513 So.2d 1206 (La.1987). If a jury verdict is "tainted," the appellate court must make an independent review of the record and decide which party should prevail by a preponderance of the evidence. McLean v. Hunter, 495 So.2d at 1304.
Although there are certain circumstances in which the operation of inns and hotels are held to a high standard of care in the protection of their guests, innkeepers and hotel operators are not common carriers and, accordingly, owe to their guests and invitees only reasonable care in protecting them from slipping and falling in the "public" areas of the building. The line of cases that impose a "high degree" of care on hotels and innkeepers do not involve negligent "slip and fall" cases but involve criminal or intentional tortious behavior. See Kraaz v. LaQuinta Motor Inns, Inc., 410 So.2d 1048 (La.1982) (hotel owed guests a high degree of protection against robbery and assault while in their rooms); Banks v. Hyatt Corp., 722 F.2d 214 (5th Cir.1984) (hotel had duty to protect guest from being murdered a few feet from the entrance to the hotel).
However, in Lorio v. San Antonio Inn, 454 So.2d 864 (La.App. 5 Cir.1984), the Court applied the higher standard of duty used in Kraaz to a slip and fall. The Court stated that the innkeeper "owes his guest a high degree of care. (Citations omitted). A basic element of this duty is to maintain the premises in a reasonably safe condition." Id. at 866. In our original statement, we looked to another Fifth Circuit case for further explanation of the duty created in Lorio. In discussing, Johnson v. Beavers, 496 So.2d 1251 (La.App. 5 Cir.1986) this Court stated "there is no indication that the Johnson court chose `reasonable care' over `high degree of care'." On reconsideration, we focus on Johnson's express holding: "[t]he hotel owed a duty to its invitees to use reasonable care to protect them from foreseeable harm." Id. at 1256. (Emphasis ours). Lorio is alone in its application of a high degree of care to a slip and fall and an aberration from previous and current jurisprudence.
The facts in the instant case do not involve any criminal or intentional tortious behavior. Therefore, reasonable and ordinary care is the proper standard by which to judge the duty of a hotel to prevent a slip and fall in the public area of the building.
In our original opinion, we found that the jury instruction as to Hyatt's duty was a correct statement of the law. Upon further reflection we reverse that finding and hold that upon review of the facts of this case, the instruction was improper and prejudiced the jury verdict. Under these circumstances and because the record is complete, we are required to review the matter de novo and render a judgement.

*391 Negligence

To determine whether liability exists under a particular set of facts, the Louisiana courts have adopted a duty-risk analysis. Under this analysis the plaintiff must prove (1) that the conduct in question was a cause-in-fact of plaintiff's harm, (2) that the defendant owed a duty of care to the plaintiff, (3) that the requisite duty was breached by the defendant and (4) that the risk of harm was within the scope of protection afforded by the duty breached. Mundy v. Department of Health and Human Resources, 620 So.2d 811, 813 (La.1993). See La.Civ.Code Ann. art. 2315 (West Supp.1996).

Cause in Fact
To prove cause-in-fact, a plaintiff must prove only that the conduct was a necessary antecedent of the accident, that is, but for the defendant's conduct, the incident would probably not have occurred. South Central Bell Telephone Company v. Sewerage and Water Board of New Orleans, 94-1648 (La.App. 4th Cir. 3/16/95), 652 So.2d 1090, 1094, writ denied, 95-0949 (La. 5/19/95), 654 So.2d 1090.
Jones contends that a water spot on the floor of the Hyatt was the cause of her fall. Jones' sister-in-law, Shelia Ann Jones Ancar, was walking with Jones at the time of the accident. Ancar testified that she saw the small puddle of water before Jones fell but did not have time to warn Jones to avoid the water. Ancar also testified that there were water spots on the bottom of Jones' skirt after she fell.
Keith Caruso, the assistant manager of the Hyatt, testified that Jones stated at the time of her fall that she had slipped on something. He stated that he did not see any liquid on the floor but that he did not feel the area for wetness. He also testified that he was unable to verify whether the area had been recently cleaned.
Carlos Martinez, the security officer for Hyatt who completed the report on Jones' fall, testified that he did not check the floor for spilled substances.
Brooksie Andrews, who assisted in the investigation for Hyatt, gave the only discrepant testimony. She stated that Jones reported she had fallen because her foot crooked to the side and there was nothing on the floor that caused her to fall. At trial, Jones concurred with Andrews' testimony but clarified that she did not see anything on the floor because she had not looked. However, Jones did testify that the skirt she was wearing at the time of the fall had smudges"like a water spot"around the bottom of the skirt after she fell.
The record shows that there was water on the floor that caused Jones to fall and no evidence was presented to refute this contention. Jones has satisfied the burden of proof that "but for" the water on the floor, she probably would not have fallen.
Hyatt argues that the jury erred in not considering the effects of two subsequent automobile accidents and a fall at home that Jones suffered when determining the cause of her injuries. The record indicates that Jones admitted to the subsequent accidents, that her pattern of treatment she received after her fall at the Hyatt did not change after the later accidents, and that, according to Dr. Watermeier's testimony, Jones' injuries arose as a result of her fall at the Hyatt and not the subsequent fall or automobile accidents. There is nothing in the record that Jones' subsequent accidents caused her injuries. Accordingly, we find that her fall at the Hyatt was the cause-in-fact of her injuries.

Duty of Hyatt
Duty is a question of law. A hotel owes a duty to its patron to exercise reasonable and ordinary care including maintaining the premises in a reasonably safe and suitable condition. Brasseaux v. Stand-By Corp., 402 So.2d 140, 144 (La.App. 1st Cir. 1981), writ denied, 409 So.2d 617 (La.1981); Kauffmann v. Royal Orleans, Inc., 216 So.2d 394 (La.App. 4th Cir.1968). Accordingly, the Hyatt has a duty to exercise reasonable and ordinary care to maintain its floors in a reasonably safe and suitable condition.

Breach of Duty
Hyatt contends that it did not breach its duty to Jones because it had a *392 maintenance program in place to deal with spills. However, it is not sufficient that Hyatt had set procedures for keeping floors free from spills; Hyatt must prove that it followed the procedures. Cf. Duckett v. KMart Corp., 94-0579 (La. 10/17/94), 645 So.2d 621, on remand to 92-385 (La.App. 5th Cir. 2/15/95), 650 So.2d 414, reh'ing denied, (March 17, 1995); Neyrey v. Touro Infirmary, 94-0078 (La.App. 4th Cir. 6/30/94), 639 So.2d 1214.
Keith Caruso testified that Hyatt has a job safety booklet that requires that everything spilled or dropped on the floor be removed. He also stated that there were three public attendants on duty at the time of the accident whose jobs were to keep the floors clean. However, there was no testimony that any of the three public attendants had patrolled the area where Jones had fallen. Additionally, on a later day, a safety expert observed the area where Jones had fallen and noted that food and drink remained on the floor for 40 minutes before a public attendant cleaned the area even though three different Hyatt employees walked past the spill. Although Hyatt offered evidence that it had a procedure to keep its floors free from spills, it did not prove that the procedure was followed the day that Jones fell. Jones offered evidence that Hyatt did not consistently follow its procedures for keeping floors free of foreign substances. Therefore, Hyatt breached its duty to maintain its premises in a reasonably safe and suitable condition for its patrons.

Scope of Duty
The scope of duty inquiry asks whether the duty is intended to protect this plaintiff from this type of harm arising in this manner. Roberts v. Benoit, 605 So.2d 1032 (La.1991), on reh'ing, (La.1992). Clearly, Hyatt has a duty to maintain reasonably safe premises which includes reasonably keeping floors free from spilled food and liquid so as to prevent a guest from slipping and falling.
In summary, we find that Hyatt was negligent in allowing a foreign substance to remain on its floor and that it is liable Jones for her injuries.

Comparative Negligence
Once we assign liability to Hyatt, we next must determine whether Jones' actions or omissions contributed to the fall. The various factors that may influence the degree of fault assigned to an actor include: (1) whether the conduct resulted from inadvertence or involved any awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacity of the actor, and (5) any extenuating circumstances which might require the actor to proceed without caution. Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967, 974 (La.1985).
The facts indicate that nothing Jones did or did not do contributed to the fall and a review of the Watson factors indicates that the fault for Jones' fall rests completely with Hyatt. Jones was merely walking through the corridor of the hotel when she fell. A pedestrian on a sidewalk or customer in a store is not held to the same standard of vigilance as would be necessary if traversing a jungle. Johnson v. New Orleans Dept. of Streets, 94-1542 (La.App. 4th Cir. 2/23/95), 650 So.2d 1216. Accordingly, we assign no fault to Jones.

Damages

Standard of Review
Because the trial court gave an erroneous instruction to the jury on the standard of care owed by Hyatt, we conducted a de novo review to determine liability. However, different circuits in Louisiana have reviewed damages awarded for abuse of discretion or de novo.
In Schwamb v. Delta Air Lines, Inc., 516 So.2d 452, 466 (La.App. 1st Cir.1987), writs denied, 520 So.2d 750 (La.1988), after a finding that a trial court error tainted the jury's verdict concerning liability, the court reviewed the damage awards for abuse of discretion. On the other hand, the Third Circuit has held that, when a jury charge has tainted the jury's determination of liability, the appellate court is to review the record independently without reference to the manifest error rule. Marks v. Louisiana Farm *393 Bureau Cas. Ins., 556 So.2d 949 (La.App. 3d Cir.1990). In Graves v. Lou Ana Foods, Inc., 604 So.2d 150 (La.App. 3d Cir.1992), the court justified reviewing the awards de novo because the effect of the erroneous jury instruction on the damages the jury awarded could not be discounted.
In the instant case, we cannot say that the erroneous jury charge did not prejudice the amount of damages awarded by the jury. Accordingly, we vacate the trial court award on damages and assess the damages based on the record before us.

Past Medical Expenses
Testimony at trial indicated that Jones had medical bills of $12,522.00 and the cost of her surgery was $11,738.00. The parties stipulated that Dr. Charles April had bills totaling $688.10; Dr. Philip Logaglio had bills of $475.00; and Dr. Thomas Cashio had bills of $310.00.[1] The total amount for past medical expenses that can be supported by the record is $24,733.90.

Future Medical Expenses
Plaintiff must prove that future medical expenses will be incurred, even though such costs cannot be fixed with precision. Smith v. Two "R" Drilling Co., Inc., 606 So.2d 804, 811 (La.App. 4th Cir.1992), writ denied, 607 So.2d 560 (La.1992). Awards for future medical expenses must be supported with medical testimony and an estimation of probable costs. Id. Dr. Watermeier testified that it is a "possibility only" that Jones might need future surgery. This is insufficient to award cost for a future surgery.
Dr. Watermeier also testified that he charges $150.00 per visit to give injections or perform various tests and that he will need to see Jones from time to time. An appropriate award for future medicals that can be supported by the record is $4,000.00.

Past Lost Wages and Benefits
Jones was awarded $44,536.00 for past lost wages. The record indicates that Jones was paid her full salary for the two terms she was on leave minus $3,783.00 per semester of leave. However, Hyatt is not entitled to credit for the sabbatical pay that Jones received. Teal v. Allstate Ins. Co., 348 So.2d 83 (La.App. 4th Cir.1997), writ denied, 351 So.2d 164 (La.1997), held that:
A plaintiff is allowed to recover wages compensated by sick leave or annual leave that is accumulated. The rationale is that the plaintiff's forced present use of this leave precludes its future use and prejudices whatever credits might have inured to plaintiff's benefit upon retirement because of its accumulation.
Because Jones was forced to take a year's sabbatical leave, which accrued after six consecutive years of employment, Jones lost the opportunity to take her accrued leave for other reasons such as returning to school. Additionally, we find it irrelevant that, if Jones had not use her accrued leave, her right to use it was forfeited upon her retirement. See Blanco v. Travelers Ins. Co., 350 So.2d 1252, 1254 (La.App. 4th Cir.1977) (Court awarded lost wages even though plaintiff was paid sick leave which would have been forfeited upon her leaving the job.) Accordingly, the record supports the previous award of $44,536.00 for lost wages.

Loss of Personal Services
Jones testified that there are many household tasks that she can no longer perform such as mopping and mowing her lawn. Dr. Watermeier testified that Jones will have difficulty lifting 25 to 30 pounds on a frequent basis and should avoid tasks that require bending, stooping, lifting, and standing for an extended period of time. Jones testified that she occasionally hires someone to assist her in household tasks that she used to do herself. Dr. Wolfson testified that Jones would require $76,005.00 to cover personal services for 20 hours per week. Considering Jones' testimony as to the occasional need for such services, an award of $20,000.00 for loss of personal services is appropriate.

Future Lost Wages
Dr. Watermeier testified that Jones is "restricted to reaching above the shoulder *394 level on a repetitive basis and should avoid lifting over 25 to 30 pounds on a frequent basis." He sent a letter to her employer that she was permanently unable to work as a special education teacher. At no time did Dr. Watermeier state that Jones was prohibited from performing any and all type of work. In fact, he stated that she could perform sedentary work under the restrictions mentioned above.
Jones is a intelligent woman with a Masters degree in education. Thomas Munier, a vocational rehabilitation specialist, testified that Jones has many transferable skills. He did state that she might have to travel outside her immediate area in order to find suitable work and no evidence was presented that Jones is medically prohibited from driving long distances. Ramona Thomas, another vocational rehabilitation expert, testified that there are sedentary jobs in Jones' general geographical area that would pay between $18,000.00 to $23,000.00 per year.
Jones was making approximately $35,000.00 at the time of her accident. Based on Jones' many years of experience and her high level of education, we will presume that Jones can find employment in the upper limit of the range of salaries submitted by Thomas, i.e. $23,000.00. Based on that figure with a six percent discount, Dr. Wolfson calculated that an award of $130,085.00 would be required.[2] We agree that this amount will adequately compensate Jones for her future lost wages.

General Damages
As a result of her fall at the Hyatt, Jones underwent an anterior cervical fusion at C3-C4 and C4-C5 discs for which she was hospitalized for two days. Further surgery has not been recommended but Jones continues to experience pain. Jones has had to abandon her chosen career as a special education teacher because of the resulting partial disability. We believe that an award of $200,000.00 is fair compensation.
A review of the jurisprudence indicates that this award is reasonable under these particular set of circumstances. In Babineaux v. Lykes Bros. Steamship Co., Inc., 608 So.2d 659 (La.App. 3d Cir.1992), writ denied, 610 So.2d 819 (La.1993), the plaintiff underwent a surgery for two herniated discs. He continued to experience pain after the surgery and was restricted from any gainful employment. The appellate court upheld an award of $175,000.00 for pain and suffering.
In Delery v. Prudential Ins. Co. of Amer., 94-0352 (La.App. 4th Cir. 9/29/94), 643 So.2d 807, writs denied, 94-2623, 94-2666 (La. 12/16/94), 648 So.2d 393, plaintiff had an anterior cervical discectomy and fusion. After surgery, she continued to experience pain in her neck and pain. She is restricted from prolonged sitting, moving her arms over her head, and lifting. She testified that she cannot participate in several recreational activities that she used to enjoy and that her constant pain has kept her from working. She was awarded $110,000.00 in general damages.
In Davis v. Sewerage and Water Board of New Orleans, 555 So.2d 664 (La.App. 4th Cir.1989), writ denied, 558 So.2d 603 (La. 1990), plaintiff underwent an anterior fusion at the C6-C7 level. Plaintiff was advised against any activities requiring heavy lifting of greater than 35 pounds or hyperextension of the neck. The trial court had awarded $350,000.00 but this Court lowered the award to $200,000.00 and stated that was the highest amount reasonable within the court's discretion. Id. at 9.
In the present case, Jones had a double disc anterior fusion. She continues to suffer occasional pain for which she takes medication. She has certain physical restrictions which have restricted her from continuing her previous career and performing many household tasks. An award of $200,000.00 is *395 not unreasonable in light of the impact the injury has made on her life both physically and emotionally.
We render judgment in favor of Jones and against Hyatt in the amount of $24,733.90 for past medical expenses; $4,000.00 for future medical expenses; $44,536.00 for past lost wages and benefits; $20,000.00 for loss of personal services; $130,085.00 for loss of future wages; and $200,000.00 for general damages for a total award of $423,354.90 with interest from the date of judicial demand and all costs.
AMENDED; AFFIRMED AS AMENDED.
BYRNES, J., dissents with reasons.
WALTZER, J., dissents with reasons.
BYRNES, Judge, dissenting.
I respectfully dissent and stand by the original unanimous opinion of this panel which applied the correct law and standard of review and was supported by the record. The rehearing raises no new issues of fact or law. All such issues were carefully considered by the Court prior to rendering the original opinion.
WALTZER, Judge, dissenting.
I respectfully dissent and agree with the original unanimous opinion of the three-judge panel that heard this case on appeal over a year ago.
The majority on rehearing erroneously relies on Johnson v. Beavers, 496 So.2d 1251 (La.App. 5 Cir.1986), and applies the duty of mere "reasonable care" owed to invitees to Ms. Jones. This case is clearly inapposite to the instant case. In Johnson:
Yvonne Johnson was employed as foreman of a road maintenance crew for the Jefferson Parish Department of Public Works. On that day the crew was cutting grass on the neutral ground of Severn Avenue in Metairie, near the Landmark Motor Hotel. At midmorning the crew members took a break to use the restroom facilities of the Landmark.
She was not a guest of the Landmark, either as a room tenant or as a guest attending a function held on the premises of the motel. This holding is not inconsistent with that in Lorio v. San Antonio Inn, 454 So.2d 864 (La.App. 5 Cir.1984), where the traditional innkeeper's "high degree of care" standard was applied in a slip and fall case. There is nothing in the statutory or jurisprudential law of this State applicable at the time of Adrienne Jones's injury to support the majority's unwarranted conclusion that the "high degree of care" duty applied only to room tenants, or only in cases involving intentional torts or criminal acts. Nor is there any authority for the majority's conclusory statement that Lorio is "aberrational." It is undisputed that Ms. Jones, while not an overnight room tenant at the Hyatt facility, was nonetheless a guest at a trade show being held on the hotel premises as part of the hotel's normal operations. She was not merely "in the neighborhood" using public facilities in the hotel, like Yvette Johnson, or wandering without purpose through the hotel.
My review of the jury charge as a whole convinces me that it was a correct statement of the law. The jury was charged at length on the duty of reasonable care, and the law of comparative fault, and Louisiana's dutyrisk analysis of fault. The trial court gave a specific charge relating to innkeeper liability:
In addition to these general rules of conduct the courts have defined certain duties pertinent to this case. An innkeeper owes his guests a high degree of care and protection. A basic element of this duty is to maintain the premises in a reasonably safe condition. A hotel has a duty to maintain premises in a reasonably safe condition and to warn visitors of any hidden or concealed peril which was known or reasonably discoverable. A motel is not the insurer of a guest against all risk of injury on the premises. The failure to take every precaution against all foreseeable injuries to another does not necessarily constitute negligence under Louisiana law. The risk involved must be foreseeable and unreasonable before such a duty arises.
In order to prove negligent conduct of the Hyatt Corporation in this case, you must find by a preponderance of the evidence *396 that it breached its duty to the plaintiff and that said breach was a proximate cause of her injuries.
Even were I to accept the majority's baseless conclusion that somehow Ms. Jones was not a guest to whom Hyatt owed a high standard of care, I am persuaded that the jury charge, taken as a whole, and the evidence of record supports the conclusion that Hyatt breached both the high standard of care and the duty of reasonable care to this plaintiff.
The jury had before it evidence that despite Hyatt's rigorous written safety procedures, at the time of Ms. Jones' injury no one had cleaned or inspected the area where she fell from 6 in the morning until 11 at night. Despite the fact that there was a water cooler in the immediate vicinity, and despite the fact that there had been a previous slip and fall in water on the waxed brick floor, and despite the laudatory but, in practice, highly theoretical maintenance procedures, Hyatt placed no warning and made no inspections of the area where Ms. Jones fell.
Therefore, were I to accept the majority's faulty reasoning on the standard of care applicable to Hyatt, I would find the jury charge cited above to be at most harmless error in light of the overwhelming evidence of ordinary negligence causing Ms. Jones' serious injury.
So long as the jury instructions given are fair and reasonably point up issues and provide correct principles of law for the jury to apply to the issues, adequacy of the instructions will be determined by reviewing the jury instructions as a whole. Kennedy v. St. Charles General Hospital Auxiliary, 630 So.2d 888, 896 (La.App. 4 Cir.1993), writ denied 634 So.2d 863 (La.1994). A trial judge has a duty to give instructions which properly reflect the law applicable in light of the facts of a particular case, and in order to fulfill that duty, he or she must both require that the jury consider only the correct law and avoid confusing the jury. Kennedy, 630 So.2d at 895.
Were I to agree with the majority that the innkeeper liability charge was incorrect AND confused the jury, I would still have to dissent from the majority's de novo review of damages. Such a review is proper ONLY as to findings potentially impacted by the error found by the reviewing court. In this case, the majority found error only in the jury charge concerning Hyatt's standard of care. There was no finding that the jury was improperly charged as to the law of damages, and my independent review of the instructions on damages finds them to be correct statements of Louisiana law on that subject. Absent such a finding of error in the charge on damages, the award was reviewable solely under the manifest error standard. See Kennedy, 630 So.2d at 895. The majority's de novo review of damages is beyond its permissible scope of review and is clearly erroneous as a matter of law. I therefore respectfully dissent from this Court's de novo review of plaintiff's damage award. Applying the manifest error standard, I would affirm the jury's damage award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. den. 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
NOTES
[1] Defendants contend that the surgery performed by Dr. Watermeier was unnecessary. The jury obviously found otherwise. We cannot say that such a finding is manifestly erroneous.
[2] The parties stipulated only that the amounts of the bills were correct. The defendants did not stipulate that they were for justifiable medical expenses. Defendants mentioned in their brief that only $1000.00 out of the total medical expenses was justifiable, but they failed to give any specifics. We find no basis for denying plaintiff's claim to any of the stipulated amounts.
[1] The stipulation was the correctness of the figures and not that the expenses were justifiable.
[2] The amount of money she currently receives from social security and her retirement fund are collateral and are not used in calculating her loss of future wages. See Allen v. State, 535 So.2d 903 (La.App. 2d Cir.1988), writ denied, 536 So.2d 1201 (La.1988) (awards for future lost wages should not be reduced by social security disability benefits); Swann v. City-Parish, 492 So.2d 1225 (La.App. 1st Cir.1986) (disability retirement benefits were not deducted from plaintiff's award for future lost wages).